JOURNAL ENTRY and OPINION
Defendant-appellant Darryl E. Byrd appeals from his convictions after a jury trial of the following offenses, viz.: two counts of forcible rape of a minor and nine counts of forcible felonious sexual penetration of a minor, and appeals also from the trial court's subsequent determination he is a sexual predator.
Appellant argues that his convictions are supported by neither sufficient evidence nor the weight of the evidence adduced at trial, that the trial court improperly instructed the jury regarding the element of "force," and that his trial counsel provided ineffective assistance. Appellant additionally argues that the trial court failed to provide proper notice to him prior to making its determination he is a sexual predator.
Following a review of the record, this court finds only appellant's last argument has merit. Therefore, appellant's convictions and sentences are affirmed, but the determination appellant is a sexual predator is reversed and this case is remanded for a new hearing to be held in accordance with the requirements of R.C. 2950.09.
Defendant's convictions stem from his relationship to the victim, C.R.[1] C.R., born on January 18, 1986, was the daughter of Stephanie Robinson. Appellant, a former boyfriend of Robinson's, married Robinson's sister, C.R.'s aunt Deborah, when C.R. was approximately three years old. Robinson often placed her children in the care of Deborah and appellant. Thus, it was not unusual for C.R. and her older brother Michael to stay at the Byrd apartment for overnight visits.
C.R. testified that beginning sometime in 1993, "after [her] aunt would go to bed for work the next day[, appellant] would come over next to [her] and start feeling [her] thighs"[2] as he and C.R. sat on the sofa watching television. C.R. stated on these occasions appellant proceeded to place "his fingers in [her] vagina." She indicated this activity occurred "nine or ten" times from 1993 until 1996.
C.R. further testified that in 1996, when she was ten years old, appellant "actually got on top of [her] and put his penis in [her] vagina." C.R. explained that she had been sleeping on the sofa during that overnight visit; as her aunt was leaving for work on that morning, her aunt had roused her and told her to go lay on the bed where appellant slept. C.R. testified she obeyed, and after approximately an hour had passed, she awoke to find appellant straddling her. He penetrated her with his penis, and, after ejaculating, "told [her] to go take a shower."
C.R. testified that a similar incident occurred a few weeks later. She and her brother and a male cousin were visiting their aunt's apartment when the boys decided to take a morning walk to a nearby store. Although C.R. wanted to accompany them, appellant refused his permission. C.R. became angry and withdrew to the bedroom. When the boys had gone, appellant entered, "told [C.R.} to get on top of him," pulled her arm to coerce her into the proper position, then had intercourse with her. Once again, after appellant ejaculated, he told C.R. to "go take a shower."
In August 1996 Robinson took her two children and moved to Texas. Robinson testified she did this to escape from appellant's "sexual advances." However, the relocation was unsuccessful, so she returned with her family to Cleveland a year later. By that time, Robinson's son Michael was sixteen.
Michael eventually began to date a young woman named Alix Johnson. One night in the late summer of 1999, Robinson had an out-of-town commitment, so she requested Michael and Alix to look after C.R. Robinson told the two they were to take C.R. to her aunt Deborah's house if they decided to go out for the evening.
However, when the two young people presented this plan to C.R., she became extremely upset. C.R. eventually confessed to Alix, without elaboration, the reason for her distress was that appellant had been "touching on her." Alix encouraged C.R. to speak to Robinson; however, C.R. expressed reluctance to do so. Soon afterward, Alix informed one of C.R.'s cousins, who told Robinson. Robinson, believing only that her daughter had been inappropriately touched, confronted appellant with that accusation via telephone. Appellant's response was, "That's 25 years to life. Why would I do anything like that?"
A few weeks later, Robinson learned C.R.'s experiences with appellant had been of a more serious nature than mere "touching;" therefore, she took C.R. both for medical treatment and to the police station. During the evening investigation, appellant eventually provided a written statement in which he denied any wrongdoing and theorized C.R. had made accusations against him because she believed he was "a mean uncle" for not permitting her to have her way.
Appellant subsequently was indicted on twenty-two counts as follows: two counts of forcible rape of a minor, R.C. 2907.02(A)(1)(a) and (A)(2); two counts of forcible gross sexual imposition upon a minor, R.C. 2907.05(A)(1) and (A)(4); nine counts of forcible felonious sexual penetration of a minor, R.C. 2907.12[3]; and nine counts of gross sexual imposition upon a minor, R.C. 2907.05. Appellant pleaded not guilty to the charges and was appointed counsel to represent him.
Appellant's case proceeded to a jury trial. The state presented the testimony of C.R., Robinson, Alix Johnson, and some of C.R.'s cousins. Following the presentation of these witnesses, the state requested the dismissal of the two counts of forcible gross sexual imposition upon a minor and all nine of the counts of gross sexual imposition upon a minor. The trial court granted the request.
Appellant thereafter presented the testimony of his wife Deborah and also testified in his own defense. Subsequently, the jury returned verdicts of guilty on the remaining counts of the indictment, viz., two counts of forcible rape of a minor and nine counts of forcible felonious sexual penetration of a minor. The trial court ultimately sentenced appellant to concurrent terms of life imprisonment for his convictions. This court has granted appellant's request to file a delayed appeal. He presents seven assignments of error for review, which will be addressed together when appropriate.
Appellant's first, second, third, and fifth assignments of error state:
ASSIGNMENT OF ERROR I:
 APPELLANT BYRD'S CONVICTIONS RESULTING IN LIFE SENTENCES FOR FELONIOUS SEXUAL PENETRATION WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, TO THE OHIO CONSTITUTION BECAUSE THE STATE DID NOT OFFER PROOF OF "FORCE" OR "THREAT OF FORCE."
ASSIGNMENT OF ERROR II:
 APPELLANT BYRD'S CONVICTION AND LIFE SENTENCE FOR RAPE UNDER COUNT ONE OF THE INDICTMENT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, TO THE OHIO CONSTITUTION BECAUSE THE STATE DID NOT OFFER PROOF OF "FORCE" OR "THREAT OF FORCE."
ASSIGNMENT OF ERROR III:
 APPELLANT BYRD'S CONVICTIONS FOR RAPE AND FELONIOUS SEXUAL PENETRATION WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, TO THE OHIO CONSTITUTION, INCLUDING THE JURY'S FINDING OF "FORCE" OR "THREAT OF FORCE" UNDER COUNT TWO OF THE STATE'S INDICTMENT.
ASSIGNMENT OF ERROR V:
 THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT INSTRUCTED THAT A LESSER DEMONSTRATION OF FORCE WAS REQUIRED WHEN THE RELATIONSHIP BETWEEN VICTIM AND DEFENDANT WAS ONE OF "CHILD AND UNCLE."
In these assignments of error, appellant asserts his convictions must be reversed on the basis that evidence adequate to establish the element of force was lacking.[4] Appellant further asserts the trial court provided to the jury an improper standard to determine the existence of that element. This court disagrees.
Pursuant to Crim.R.29(A), a trial court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman
(1978), 55 Ohio St.2d 261. The evidence must be viewed in a light most favorable to the state. State v. Dennis (1997), 79 Ohio St.3d 421, 430.
Appellant argues the state provided insufficient evidence in this case to establish the element of force contained in the crimes of rape and felonious sexual penetration. The supreme court considered this identical argument in State v. Dye (1998), 82 Ohio St.3d 323.[5]
In determining the element of force was proved, the supreme court in Dye observed that the "youth and vulnerability of children," coupled with the power inherent in an adult "in the position of authority," creates a unique situation of "dominance and control." In such situations, "explicit threats and displays of force are not necessary." Rather, "subtle and psychological" pressure creating either fear or duress in the victim will constitute the requisite amount of dominance and control necessary to sustain a conviction. The evidence of the "age, size, and strength of the parties and their relation to each other" is considered, as is evidence of "psychological force."
In this case, as in Dye, from the age of three C.R. "was forced to submit to the authority" of a man twenty-five years her senior "who was not [her] parent, but who stood in a position of authority over [her.]"Id. at 328. The evidence showed appellant was C.R.'s uncle, C.R. was expected to obey him, and C.R. did obey him. C.R. testified that appellant would "start rubbing [her] thighs, open up [her] legs, and put his finger in [her] vagina." She stated appellant ordered her to shower after each penile penetration. She further stated she was "scared" to say anything about appellant's actions.
The trial court, therefore, did not err in failing to order a judgment of acquittal of appellant as to the charges of forcible rape and forcible felonious sexual penetration of a minor. Id. at 329; see, also, State v.Bluford (Dec. 9, 1999), Cuyahoga App. No. 75228, unreported; State v.White (Oct. 16, 1997), Cuyahoga App. No. 71188, unreported, cf., Statev. Wellman (May 18, 2000), Cuyahoga App. No. 76219 unreported.
Similarly, the trial court's instructions to the jury in this regard did not constitute plain error. State v. Phillips (1995), 74 Ohio St.3d 72,83; State v. Price (1979), 60 Ohio St.2d 136. In instructing the jury on the elements of the charge of rape, the trial court defined "force" in a more restrictive manner than Dye permits, therefore, appellant only could have benefitted from the instruction. State v. Bluford, supra. Moreover, the trial court's instruction to the jury as to the element of force necessary for a conviction for felonious sexual penetration comported with the supreme court's directive as expressed in Dye.
For the foregoing reasons, appellant's first, second, third and fifth assignments of error are overruled.
Appellant's sixth assignment of error states:
ASSIGNMENT OF ERROR VI:
 DARRYL BYRD WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION WHEN HIS COUNSEL FAILED TO OBJECT TO IMPROPER JURY INSTRUCTIONS.
Appellant argues his trial counsel provided ineffective assistance for his failure to challenge the trial court's instructions to the jury. Appellant's argument is unpersuasive.
 The claim of ineffective assistance of counsel requires appellant to demonstrate that counsel's performance fell below an objective standard of reasonable representation and, in addition, appellant thereby was prejudiced. State v. Bradley (1989), 42 Ohio St.3d 136; see, also, State v. Smith (1985), 17 Ohio St.3d 98.
Since, as hereinbefore stated, a review of the record demonstrates the jury received instructions that either were to appellant's benefit or comported with a correct statement of the law, trial counsel would have no reason to challenge the instructions. Hence, appellant cannot demonstrate counsel's performance was deficient. State v. Howard (Jan. 18, 1996), Cuyahoga App. No. 68977, unreported.
Accordingly, appellant's sixth assignment of error also is overruled.
Appellant's fourth assignment of error states:
ASSIGNMENT OF ERROR IV:
 THE CONVICTIONS AGAINST DARRYL BYRD ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THERE WAS NO SUBSTANTIAL EVIDENCE UPON WHICH A TRIER OF FACT COULD REASONABLY CONCLUDE THAT THE ELEMENTS HAD BEEN PROVEN BEYOND A REASONABLE DOUBT.
Appellant argues the evidence cannot support his convictions, essentially on the basis that the state's witnesses' testimony as to how C.R. made her initial disclosure of the incidents was contradictory. Appellant contends his evidence concerning C.R.' s motive to fabricate the allegations of abuse was more compelling. This court disagrees.
With regard to an appellate court's function in reviewing the weight of the evidence, the Ohio Supreme Court has set forth the following as the relevant analysis:
 * * * Although a court of appeals may determine that a judgement of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgement is against the weight of the evidence. (Citation omitted.) * * *
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs [v. Florida (1982)], 457 U.S. [31], at 42, 102 S.Ct. [2211] at 2218, 72 L.Ed.2d [652] at 661. See, also, State v Martin (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. Rep. 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").
State v. Thompkins (1997), 78 Ohio St.3d 380, 387. (Emphasis added.)
Thus, this court must be mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
The victim's testimony in this case was clear and compelling. She gave a convincing chronology of her association with appellant and could remember details about the incidents such as the times of day they occurred and the clothing she was wearing at the time. C.R.'s disclosures of the incidents initially were tentative, given only to young family members whom she trusted, and, on one occasion, were made without her awareness to several people at the same time. Moreover, her testimony in many aspects was corroborated by that of the other state's witnesses.
Appellant's theory that C.R. fabricated the allegations because he curtailed one of her telephone calls simply was incredible. The jury, therefore, was well within its prerogative to discount it. Thus, the verdicts of guilty were not against the manifest weight of the evidence.State v. Hightower (Sept. 14, 2000), Cuyahoga App. No. 76847, unreported; State v. Wellman, supra; State v. Bluford, supra.
Accordingly, appellant's fourth assignment of error also is overruled.
Appellant's seventh assignment of error states:
ASSIGNMENT OF ERROR VII:
 THE TRIAL COURT'S FINDING DARRYL BYRD WAS A SEXUAL PREDATOR VIOLATES THE OHIO AND UNITED STATES CONSTITUTIONS AND R.C. 2950.09 BECAUSE MR. BYRD WAS NOT PROVIDED WITH NOTICE THAT HIS SEXUAL PREDATOR HEARING WOULD TAKE PLACE AT THE TIME OF HIS SENTENCE AND BECAUSE HE WAS DENIED HIS RIGHT OF ALLOCUTION.
Appellant argues the trial court failed to give him notice of its intent to conduct a sexual predator hearing at the time of sentencing as required by R.C. 2950.09(B)(1). The state concedes appellant's argument.
Since the record supports appellant's argument, this court, pursuant toState v. Gowdy (2000), 88 Ohio St.3d 387, must reverse and remand for a new hearing. State v. Watson (June 14, 2001), Cuyahoga App. No. 78499, unreported.
Accordingly, appellant's seventh assignment of error is sustained.
Appellant's convictions and sentences are affirmed. The trial court's determination appellant is a sexual predator, however, is reversed and this case is remanded for a new sexual predator hearing to be held in compliance with the statutory requirements.
This case is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.
It is ordered that appellee and appellant share equally in the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J., and ANN DYKE, J., CONCUR.
[1] Pursuant to the policy of this court, the victim will be referred to only by her initials.
[2] Quotes indicate testimony given by a witness at appellant's trial.
[3] The date of these offenses was set forth as "January, 1993 to December, 1995."
[4] Presumably, appellant argues that the trial court sua sponte
should have considered the sufficiency of the evidence, since the record reflects appellant did not make a Crim.R. 29(A) motion for judgment of acquittal at the conclusion of the state's case.
[5] This court notes that State v. Sanchez (Apr. 9, 1999), Ashtabula App. No. 98-A-0006, unreported, the authority appellant cites in support of his argument, fails to either mention or distinguish the supreme court's opinion in Dye. Therefore, Sanchez is unpersuasive.