OPINION
Richard J. Villa was found guilty of one count of forcible rape of a child under thirteen by a jury in the Montgomery County Court of Common Pleas. The trial court sentenced Villa to life imprisonment. Villa appeals from this conviction.
The state's evidence established the following facts.
Villa and the mother of the victim in this case began dating in the late 1980s. At the time, she had a daughter from a previous relationship, the victim in this case. Villa and the victim's mother were married in 1995 and divorced in 1996 but continued to have a sexual relationship. In addition to the victim, the couple had three children together.
On May 23, 2000, at approximately 2:30 p.m., the victim, who was twelve, arrived home from school. Her mother was not at home, and Villa was sleeping on the couch. A phone call woke Villa, who then ordered the victim to come to him. When she did not, he grabbed her hair, pulled her into the living room, and ordered her to remove her clothes. She was crying, and she refused. Villa then removed her pants and underwear and told her to lie down on the living room floor. At this point, he left and went to the bathroom quickly. When he returned, she was still standing and refused to lie down. He pushed her to the floor, pulled down his pants, and lay down next to her. She felt him put what seemed to be two fingers of his left hand into her vagina. She repeatedly told him to stop and that he was hurting her, but he did not stop. He then tried to get on top of her. When they heard someone coming, he jumped up, and her mother walked into the room and began screaming at him and called 911.
The victim's mother reported to the police that she had walked in to find her daughter partially naked on the floor in the company of her ex-husband. She also told them about an incident of sexual intercourse that had occurred between her and Villa that morning. Villa was arrested and questioned by a police detective. Villa indicated at least a few times during interviews with police that he had abused the girl and that he had penetrated her with fingers on his left hand.
On May 31, 2000, Villa was indicted on one count of forcible rape of a child under thirteen with respect to the victim and one count of rape with respect to her mother. On February 13, 2001, a jury found him guilty of forcible rape of a child under thirteen and not guilty of rape. The court found Villa to be a sexual predator on April 18, 2001 and sentenced him to life imprisonment.
Villa appeals, raising four assignments of error.
 "THE VERDICT RENDERED BY THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Under this assignment of error, Villa argues that his conviction was against the manifest weight of the evidence in two respects. First, he argues that the evidence did not support that there was penetration of the victim. Second, he argues that the evidence did not support a finding that force was used.
When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra, at 175.
In Villa's first argument, he asserts that the jury's conclusion that he engaged in "sexual conduct" with the victim was against the manifest weight of the evidence. Villa was convicted of rape in violation of R.C. 2907.02(A)(1)(b), which provides:
 "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
"* * *
 "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
Villa essentially argues that the only evidence of penetration was the victim's testimony and that her testimony was not credible. He points to the lack of any physical evidence of penetration even after a rape kit and complete physical examination were conducted on the victim. In fact, according to Villa, the physical evidence negates penetration. The victim's hymen was found to be still intact and very small. Furthermore, there was no redness, swelling, scratches, or discoloration around her vagina, even though the victim testified that he had hurt her. No bodily fluid from Villa was found on the victim. Thus, Villa argues that there was no evidence of penetration aside from the victim's testimony. He seeks to discredit her testimony by pointing to the testimony of her assistant principal and counselor, both of whom testified that she had a reputation for not being truthful in some situations. He further notes that the victim did not indicate in her written statements to the police that there had been any penetration, even after penetration was discussed with her. She wrote one statement that did not indicate that Villa had penetrated her with his fingers. She was then asked to write a more detailed statement, which still did not indicate that there had been penetration. This was after both her mother and the police officer taking her statement had discussed penetration with her. Thus, Villa argues that the jury's finding of penetration was against the manifest weight of the evidence as the only evidence of penetration was not credible.
The credibility of witnesses is an issue for the jury. See State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus. In this case, we cannot find that the jury clearly lost its way in determining that the victim's testimony was credible with regard to penetration. The same nurse who testified that she had found no signs of trauma in the victim's vagina testified that the lack of trauma was not inconsistent with a penetration of two fingers. The victim was cross-examined with her prior written statements to the police, and the jury heard testimony that she could sometimes be untruthful. We do not believe that the jury clearly lost its way in believing her. Her testimony was detailed and did not contradict her written statement with regard to any material facts. She did not say in her written statement that Villa did not penetrate her in any way; she just did not mention it one way or the other. The jury could have concluded that her statements were not inconsistent. Finally, the victim's testimony was not the only evidence of penetration, as Villa himself made statements to police that indicated that he had penetrated her with a finger or fingers on his left hand. He admitted to touching her vagina, indicated that he did so with his left hand, and answered, "I don't know," when asked how far he had penetrated her with his finger. Thus, Villa's own statements to police corroborated the victim's testimony. Therefore, we conclude that the jury's finding that there was penetration was not against the manifest weight of the evidence.
Villa's second argument concerns the force specification. He argues that the jury's determination that force was used was against the manifest weight of the evidence. His argument here is much the same as that above. He points to the lack of physical evidence of force and argues that the victim's testimony was not credible.
R.C. 2907.02(A)(1)(b) does not require force. A person who engages in sexual conduct with a child under the age of thirteen commits rape, regardless of whether there is any force at all. See R.C.2907.02(A)(1)(b). However, R.C. 2907.02(B) provides that "[i]f the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life." "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).
The Supreme Court has explored the evidence required to establish force in a parent-child relationship:
 "The force and violence necessary in rape is naturally a relative term, depending upon the age, size and strength of the parties and their relation to each other; as the relation between father and daughter under twelve years of age. With the filial obligation of obedience to the parent, the same degree of force and violence would not be required upon a person of such tender years, as would be required were the parties more nearly equal in age, size and strength." State v. Eskridge (1988), 38 Ohio St.3d 56, 58, 526 N.E.2d 304, quoting State v. Labus (1921), 102 Ohio St. 26, 38-39, 130 N.E. 161.
The Supreme Court emphasized factors such as size and age difference, psychological force, and the relationship between the child and the authority figure. See id. at 58-59. This reasoning has been extended to cases involving non-parents, such as babysitters. See State v. Dye
(1998), 82 Ohio St.3d 323, 329, 1998-Ohio-234, 695 N.E.2d 763. In that case, the supreme court held that "a person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." Id. Again, the age and size disparity, the feelings of the victim, and the relationship between the child and the defendant were found to be significant. See id. at 328-29. In addition, the court noted that the defendant had physically manipulated the victim into position. See id. at 329.
Based upon these cases, the jury could have determined that Villa had used force in raping the victim simply based upon his position of authority over her, their size and age disparity, and her testimony that she was afraid he would hit her if she said no. However, in addition to those factors, the victim testified that he had pulled her hair, threw her to the floor, taken her clothes off, and inserted his fingers into her vagina despite her repeated protests. Thus, there was ample evidence of actual force against the victim. As above, Villa argues that her testimony was not credible and not supported by the evidence. However, as we have discussed, the cases on force make clear that it is not necessary to physically harm the victim. Thus, the fact that no injury occurred to the victim's vagina is not dispositive of the issue of force. We discussed the issue of the victim's credibility above. Her written statement stated that Villa grabbed her by the hair, took off her pants, touched her despite her telling him to stop, and tried to get on top of her. This is consistent with her testimony and clearly established that force was used in the attack. Therefore, we conclude that the jury's determination that Villa used force in raping the victim was not against the manifest weight of the evidence.
The first assignment of error is overruled.
 "THE TRIAL COURT ERRED WHEN IT ERRONEOUSLY INSTRUCTED THE JURY THAT THEY MUST UNANIMOUSLY DECIDE UPON THE RAPE COUNT BEFORE CONSIDERING THE LESSER-INCLUDED OFFENSE OF GROSS SEXUAL IMPOSITION."
Under this assignment of error, Villa argues that the trial court erred in its instructions to the jury regarding the lesser-included offense of gross sexual imposition. The trial court did instruct the jury regarding the lesser-included offense, but Villa argues that the court erred in instructing the jury that it was required to decide the rape charge before it could consider the gross sexual imposition charge.
The supreme court has held that "acquittal first" instructions are improper:
 "A jury must unanimously agree that the defendant is guilty of a particular criminal offense before returning a verdict of guilty on that offense. If a jury is unable to agree unanimously that a defendant is guilty of a particular offense, they may proceed to consider a lesser included offense upon which evidence has been presented. The jury is not required to determine unanimously that the defendant is not guilty of the crime charged before they may consider a lesser included offense." State v. Thomas (1988), 40 Ohio St.3d 213, 220, 533 N.E.2d 286, quoting State v. Muscatello (1977), 57 Ohio App.2d 231, 387 N.E.2d 627, paragraph three of the syllabus.
In Thomas, the supreme court also held that the instructions given did not "expressly require unanimous acquittal on the charged crime, but rather addresse[d] possible disagreement by the jury on the element of prior calculation and design and a corresponding inability to reach a verdict of guilty of aggravated murder." Id. The trial court in Thomas
instructed the jury:
 "If you find that The State has proven beyond a reasonable doubt all of the essential elements of the crime of aggravated murder, then your verdict must be that the Defendant is guilty of aggravated murder; and you will not consider the lesser offense.
 "However, if you find that The State has failed to prove beyond a reasonable doubt the element of prior calculation and design, then your verdict must be that the Defendant is not guilty of aggravated murder.
 "You will then proceed with your deliberations and decide whether The State has proven beyond a reasonable doubt all of the essential elements of the lesser crime of murder." Id.
We have held that similar instructions were not "acquittal first" instructions. See State v. Hooks (Oct. 30, 1998), Montgomery App. Nos. 16978, 17007.
The state argues that the instruction in the case sub judice was not an "acquittal first" instruction. The trial court instructed the jury as follows:
 "If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of Rape of a Person Under the Age of Thirteen, your Verdict must be Guilty. If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of Rape of a Person Under the Age of Thirteen, then your Verdict must be Not Guilty.
 "If you find the Defendant Guilty of Rape of a Person Under the Age of Thirteen, you need not consider the lesser-included offense of Gross Sexual Imposition of a Person Under the Age of Thirteen. However, if you find the Defendant Not Guilty of Rape of a Person Under the Age of Thirteen, you must consider the lesser-included offense of Gross Sexual Imposition of a Person Under the Age of Thirteen."
Had the trial court stopped there, we might agree with the state that the instruction did not expressly require the jury to unanimously agree on the rape charge before considering the gross sexual imposition charge. However, the trial court continued, stating, "The second Verdict Form you have and again, you will not consider this — this secondVerdict Form unless you find the Defendant Not Guilty of the offense ofRape of a Person Under the Age of Thirteen." (Emphasis added). This instruction clearly required the jury to acquit Villa on the rape charge before considering the gross sexual imposition charge. Thus, we agree with Villa that the trial court erred in giving an "acquittal first" instruction.
However, the state also argues that Villa was not prejudiced because the trial court gave a curative instruction before the jury reached its verdict. The jury submitted a question to the court after approximately four hours of deliberation: "Your Honor, if we cannot come to a unanimous decision on the Rape charge of [the victim], are we allowed to go to the charge G.S.I.?" The court replied, "Yes, you must reach a unanimous verdict." The parties eventually agreed that this answer was incorrect. Within a half hour of the earlier answer, the court then called the jury back into the courtroom and read the following instruction:
 "The court, after further research, has concluded that you may consider the lesser-included charge of Gross Sexual Imposition of a Person Under the Age of Thirteen, if you cannot reach a unanimous Verdict on the charge of Rape of a Person Under the Age of Thirteen."
The jury returned its verdict an hour later. The state argues that this instruction cured any prejudice. Villa argues that the instruction came too late and that it did not cure the prejudice.
The curative instruction came within a half hour of the judge's reply to the jury's question. As of the time of the question, the jurors were obviously unclear on whether they could consider the gross sexual imposition charge before reaching a verdict on the rape charge. We doubt that the trial court's cryptic answer to their question cleared things up, but regardless, the error was corrected within a short amount of time. The trial court's final instruction on the matter was correct, and the jury is presumed to have followed the court's instructions. See Statev. Loza (1994), 71 Ohio St.3d 61, 75, 1994-Ohio-409, 641 N.E.2d 1082. Therefore, we conclude that the error was cured by the instruction.
The second assignment of error is overruled.
 "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT SEPARATE TRIALS."
Under this assignment of error, Villa argues that the trial court erred in refusing to grant him separate trials. He was charged with the forcible rape of the victim, a child under thirteen, and rape of the victim's mother, and he was tried on both charges together. He argues that he was prejudiced because trying the charges together allowed the prosecution to introduce evidence relating to the alleged rape of the mother and to portray him as a "sexual monster."
To prevail on this claim, Villa must demonstrate "(1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial."State v. Schaim (1992), 65 Ohio St.3d 51, 59, 1992-Ohio-31; 600 N.E.2d 661, citing State v. Torres (1981), 66 Ohio St.3d 340, 421 N.E.2d 1288, syllabus.
In considering whether Villa was prejudiced by the joinder of the two charges, we "must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." Id., citingState v. Hamblin (1988), 37 Ohio St.3d 153, 158-59, 524 N.E.2d 476. Thus, we will first consider whether the evidence relating to the alleged rape of the mother would be admissible at a separate trial for the rape of the victim.
The admission of "other acts" testimony in criminal cases is governed by Evid.R. 404(B), which provides:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
The trial court did not consider whether the evidence of Villa's alleged rape of his wife would be admissible in a separate trial for the rape of his daughter. We think it is clear that this evidence would not be admissible in separate trials.
The mother's testimony regarding Villa's alleged rape of her would not be admissible to prove that he raped the victim. What happened between Villa and his wife hours before the attack on the victim was not relevant to the rape charge regarding the victim. The issue in the rape of the victim was the victim's credibility. Identity was not at issue because, if the victim was telling the truth, there was no question that Villa was the perpetrator. None of the other exceptions in Evid.R. 404(B) apply. Thus, the joinder of the two charges allowed the jury to hear evidence of other acts that would not have been admissible at separate trials.
In the second prong of the test for determining whether a defendant was prejudiced by joinder, we look to whether "the evidence of the crimes under each indictment was `simple and distinct.'" State v. Decker
(1993), 88 Ohio App.3d 544, 549, 624 N.E.2d 350, citing Schaim, supra. If the evidence of each crime is simple and distinct, the jury is presumed to have been able to segregate the evidence. See Schaim, supra, at 62, citing State v. Roberts (1980), 62 Ohio St.2d 170, 405 N.E.2d 247. The evidence in this case was simple and distinct. The facts of each alleged crime were separate and easy to understand. The crimes involved different victims, different facts, and occurred at different times. Villa himself concedes this in his brief: "The allegations set forth in the Indictment involved separate circumstances, separate individuals, and different times. * * * The counts are also simple and distinct."[1]
Therefore, we conclude that the evidence of each crime was simple and distinct. This conclusion is bolstered by the fact that the jury acquitted Villa of the rape against the mother. See Decker, supra, at 549. Furthermore, we have held that a jury's acquittal of a defendant on one of two charges establishes that the defendant was not prejudiced by the joinder of the charges against him. See State v. Stephens (May 12, 2000), Montgomery App. No. 17851. Thus, we find that Villa has failed to establish that he was prejudiced by the joinder of the charges against him.
Because Villa has failed to establish that he was prejudiced by the trial court's refusal to order separate trials, we conclude that the trial court did not err.
The third assignment of error is overruled.
 "THE TRIAL COURT ERRED WHEN IT PROHIBITED TESTIMONY CONCERNING A PRIOR RECANTATION OF SEXUAL ABUSE ALLEGATION BY THE COMPLAINING WITNESS, [NAME OMITTED]"
Under this assignment of error, Villa argues that the trial court erred in not allowing evidence of a prior allegation that the victim made against him and her subsequent recantation of that allegation. The court concluded that the evidence was prohibited under R.C. 2907.02(D), the rape shield statute.
R.C. 2907.02(D) provides, in pertinent part:
 "Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
The Supreme Court has held that:
 "False accusations, where no sexual activity is involved, do not fall within the rape shield statute. Therefore, a defendant is permitted under Evid.R. 608(B), in the court's discretion, to cross-examine the victim regarding such accusations if "clearly probative of truthfulness or untruthfulness." However, the defendant will be bound by the answers given by the victim. Thus, if defense counsel inquires of an alleged rape victim as to whether she has made any prior false accusations of rape, and the victim answers no, the trial court would have the discretion to determine whether and to what extent defense counsel can proceed with cross-examination. However, if the alleged victim answers in the affirmative, the trial court would have to conduct an in camera hearing to determine whether sexual activity had been involved. If the trial court determined that the accusations were entirely false (that is, that no sexual activity had been involved) the trial court would then be permitted to exercise its discretion in determining whether to permit defense counsel to proceed with cross-examination of the alleged victim. We therefore hold that where an alleged rape victim admits on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an in camera hearing to ascertain whether sexual activity was involved and, as a result, would be prohibited by R.C. 2907.02(D), or whether the accusation was totally unfounded and therefore could be inquired into on cross-examination pursuant to Evid.R. 608(B)." State v. Boggs (1992), 63 Ohio St.3d 418, 421-22, 588 N.E.2d 813 (citation omitted).
In the case sub judice, the state filed a motion in limine to prevent Villa from cross-examining the victim with regard to her prior allegation. The trial court then held an in camera hearing pursuant toBoggs to determine whether sexual activity was involved. At the in camera hearing, the victim told the court that Villa had touched her inappropriately when she was in the second grade. She initially told her mother about the conduct, but later recanted her allegation when her mother reunited with Villa. The trial court determined that the prior allegation had not been false and that it had, in fact, involved sexual activity. Thus, the trial court determined that the evidence was prohibited under R.C. 2907.02(D).
Villa argues that the trial court failed to follow what he characterizes as the two-part procedure of Boggs because the court did not allow him to cross-examine the victim with regard to her allegation prior to conducting an in camera hearing. However, as the state argues, this is a misreading of Boggs. Boggs does not mandate that the defendant be given an opportunity to ask the victim if she had made any prior false allegations. It simply states that, if the defendant asks and the victim answers in the affirmative, the trial court must conduct an in camera hearing. See Boggs, supra. The trial court in this case followed Boggs
by conducting an in camera hearing to determine whether the prior allegation had been false or had involved sexual activity. In any case, it is clear that the victim would have answered negatively if asked whether she had previously made false allegations of sexual abuse, and pursuant to Boggs, Villa would have been bound by her answer.
Villa also argues that the court did not explore the prior incident sufficiently to determine whether it was false. We disagree with this argument. The court questioned the victim, observed her demeanor, and determined that she was being truthful about the prior incident of sexual abuse. We find nothing in the record to suggest that the trial court erred in this determination.
The fourth assignment of error is overruled.
The judgment of the trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.
[1] In his brief, Villa appears to misinterpret the supreme court's test. Specifically, he appears to believe that the fact that the evidence of each alleged crime was simple and distinct works in his favor, and he also asserts that the Schaim court found that the evidence was "sufficiently distinct." This is a misreading of the law and an incorrect statement of the Schaim decision. Where evidence of each crime is simple and distinct, we are able to assume that the jury was not confused by the joinder of charges. See, e.g, Schaim, supra, at 62. TheSchaim decision, in finding that the charges against Schaim should not have been joined, concluded that the evidence of each crime was not simple and distinct and therefore was likely misleading to the jury. Id.