OPINION
{¶ 1} Defendant-appellant Jonathan L. Oddi appeals the December 17, 2001 Judgment Entry of the Delaware County Court of Common Pleas which sentenced him on convictions for three counts of gross sexual imposition. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On March 9, 2001, the Delaware County Grand Jury indicted appellant with three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1), felonies of the fourth degree. At his April 5, 2001 arraignment, appellant plead not guilty. The matter proceeded to a jury trial on October 25, and 26, 2001. The following evidence was adduced at trial.
 {¶ 3} Det. Sam Keckler of the Delaware County Sheriff's Office testified he began an investigation after receiving an allegation appellant was involved in a sexual offense. The report came from the alleged victim, Erika Luzio. Det. Keckler interviewed Ms. Luzio, her parents, and appellant. Information obtained in these interviews led Det. Keckler to talk to two other girls from Luzio's school, Kelly Iverson, and Kelly Russo.
 {¶ 4} Appellant cooperated with the police, and after being given his Miranda warnings, had a conversation with Det. Keckler. Det. Keckler asked appellant if he knew why he was talking to the police. At first appellant stated he did not know, but then stated it could be because one of the girls from his driver's license education class "got the wrong idea and reported some misconduct." Tr. at 159.
 {¶ 5} Det. Keckler asked appellant if he knew Erika Luzio. Appellant responded that he knew so many students he couldn't remember if she was one or not. Shortly thereafter, appellant remembered Ms. Luzio and went into detail about a conversation he had with her during one of the in-car driving sessions. Appellant told Det. Keckler he discussed a fourth of July party with Ms. Luzio and stated Ms. Luzio would bring up conversations about boyfriends and sex.
 {¶ 6} Det. Keckler asked appellant whether he had ever inappropriately touched Ms. Luzio or had any sexual contact with her. Appellant responded the only touching he could remember was that Luzio would occasionally become upset during the driving instruction and appellant would rub her shoulder or her arm in an attempt to calm her down. Det. Keckler told appellant Ms. Luzio alleged appellant touched her breast and vaginal area. Det. Keckler testified appellant admitted he had touched Ms. Luzio's breast and he had possibly touched her vaginal area, while rubbing her upper thigh. Appellant admitted he knew the touching had gone to far, and Ms. Luzio was upset. He apologized for the touching and stated again that the touching had gone to far.
 {¶ 7} On redirect examination, Det. Keckler testified he asked appellant at the end of the interview to clarify what had happened. Det. Keckler asked appellant if he had touched Luzio's vaginal area and appellant indicated yes. Det. Keckler asked appellant if at that point and time he had determined the touching had gone to far and appellant apologized and indicated yes.
 {¶ 8} Kelly Iverson, another one of appellant's driving students, was the next to testify. Ms. Iverson testified generally about how an individual obtained a driver's license in the State of Ohio. It was her understanding at 15 1/2; years of age she could apply to get a temporary license. At that time, she could drive with a guardian or a driving instructor. After she had a temporary license for six months, she could apply for a driver's license. However, during the six months, she would have to take driver's education classes, and have "in-car" training. Once this in-car training and class work was complete, she was qualified to take a written exam and maneuverability test.
 {¶ 9} Ms. Iverson testified appellant taught both the in-car and classroom driver's education. The in-car lessons consisted of four, two hour sessions with a driver's education teacher. Ms. Iverson testified, Accell, the local driver's education school was backed-up and had a waiting list for classes. In other words, if she did not finish her classes as scheduled, she would have to wait three months before she would be able to begin the process again.
 {¶ 10} Ms. Iverson took her in-car training with appellant in August. Appellant came to the Iverson residence to pick her up. Ms. Iverson testified by the time they had reached the end of her street, appellant was already talking about sex and drugs. Further, appellant asked Ms. Iverson inappropriate questions regarding whether she had a boyfriend and what she might do with this boyfriend. As the driving lesson continued, Ms. Iverson found herself "out in the middle of nowhere" because she was unfamiliar with the driving route. At that time, appellant again asked about what Iverson had done with boys. Tr. at 194. Ms. Iverson became very uncomfortable.
 {¶ 11} Ms. Iverson testified appellant often put his hand on her leg. On these occasions, Iverson would move her leg away, never saying anything because she was embarrassed. She testified, "he was, you know, a figure of superiority. I moved my leg as far as I could, so I could still hit the gas. And he would, after I moved my leg, he wouldn't say anything for awhile. And then, you know, a little while later it would happen again. I made the bad call of not telling him to stop." Tr. at 197-198. Ms. Iverson testified appellant's hand was always a little too close to her inner thigh and always lingered too long. The situation was awkward and made her feel bad.
 {¶ 12} Ms. Iverson testified she had thought about getting out of the car, but she did not have a cell phone and did not know where she was. She decided she would be much more vulnerable out of the car than driving the car. When Ms. Iverson returned home, appellant told her "you don't need to run home and tell her mommy and daddy anything that happened or anything we talked about today." Tr. at 201. Iverson thought appellant knew that he had done something wrong.
 {¶ 13} Ms. Iverson did not want to say anything because she believed appellant would give her a failing grade so she could not get her license. She believed appellant was the only person to say whether or not she passed the class because he was the only person in the car with her. Tr. at 199. At the time, Ms. Iverson believed getting her driver's license was the most important thing "ever to happen in my life." Tr. at 201.
 {¶ 14} Kelly Russo, another driving student, provided similar testimony. Appellant was also her driving instructor and she also believed appellant had the power to fail her and force her to wait an extended period of time in order to take her "in-car" sessions again. Appellant picked Ms. Russo up at her home for her in-car instruction. Like Ms. Iverson, Ms. Russo found herself in an area with which she was completely unfamiliar.
 {¶ 15} Ms. Russo testified appellant touched her inappropriately during each of her four in-car sessions. Appellant touched the inside of her upper thigh and rubbed his hand up and down her leg. Ms. Russo asked appellant to stop and brushed his hand away with her right hand while continuing to steer the car with her left hand. Ms. Russo testified appellant's touching ranged from tickling her on her torso and thigh, to rubbing her thigh and grabbing her breast. Ms. Russo testified she would push his hand away and tell appellant to stop, but he "kind of like half laughed it off, giggling to himself. And he would stop for a period of time and start again." Tr. at 226.
 {¶ 16} Ms. Russo testified on one occasion appellant touched and cupped her breast with his hand. She pushed his hand away, but as she did, appellant grabbed her hand and held it down to his upper thigh for approximately 20 seconds. Ms. Russo testified it felt like forever. While he held her hand down, she tried to yank her hand away.
 {¶ 17} After each lessons, appellant would ask Ms. Russo if her parents were home. Even when she knew they were not at home, she would say they were because appellant made her so uncomfortable. Further, after each class, appellant would estimate the number of hours until he would see her again. He asked Ms. Russo if it would "freak [her] out" if she would wake up one morning and find appellant lying in bed next to her. Tr. at 228.
 {¶ 18} Even though appellant was completely uncomfortable on each instance, she testified she was only fifteen, and wanted to get her license "so bad." Tr. at 230. She knew there was a three month wait until other individuals could get further "in-car sessions" and she did not want to start from the beginning. Although she would have done it differently as of the date of trial, at the time, getting her driver's license was the most important thing to her. She believed appellant had the power to pass or fail her because he had to sign a sheet at the end of each in-car driving session.
 {¶ 19} The State also presented the testimony of Erika Luzio. Ms. Luzio testified appellant began asking her what she believed to be inappropriate questions during their first in-car session. Appellant wanted to know about Luzio's sexual relationships with boys. When she refused to talk about this, he asked about her friends sexual activities. Luzio testified appellant only touched her during the fourth and final in-car session, but the inappropriate conversations took place in all of the sessions.
 {¶ 20} During her last in-car session, appellant tickled Luzio and then touched her breast. He continued to touch her inner thigh, moving his hand up to touch her vaginal area through her pants. When he began tickling her on the side, she brushed him off, but then he came back and tickled her stomach. She pushed his hand away again and as she continued to drive, he reached over and touched her breast. At that point, Luzio pushed him off. Appellant asked if Ms. Luzio wanted him to stop. She said yes and he stopped. However, after a brief time, appellant again began to rub Ms. Luzio's thigh and tickle her side. He again rubbed his hand up and down her thigh and Ms. Luzio shoved his hand off again. Appellant asked Luzio if she wanted him to stop and she said yes again. Appellant stopped again.
 {¶ 21} Luzio testified that during this inappropriate touching, she was scared and couldn't say anything. She just kept driving. Luzio testified she believed appellant had the power to pass or fail on her driver's education. Luzio testified at the time appellant was touching her, she was on an unfamiliar back road and did not want to pull over. She thought she would be safer if she continued to drive home. Luzio testified after these incidents, she told her parents she did not care whether she passed or failed her driver's test. Before this incident, she really did want to get her driver's license.
 {¶ 22} Appellant also testified during trial. He testified he never initiated conversation with the girls during their driving sessions because he felt they needed to concentrate on driving. Appellant also explained the incidents of touching. He testified he had touched students on the shoulder to calm them during their driving lessons. Further, he knows he had touched students on the shoulder to push them forward so they would be seated closer to the steering wheel and better able to see. Appellant testified it was possible during one of the times he touched a student on her shoulder, he may have brushed her breast by accident. Appellant also testified he had touched Russo on the thigh to tell her to slow down when she was speeding. He testified it was possible he could have touched vaginal area by overshooting her leg when asking her to calm down and slow down. He further testified he did not rub her leg and did not intend to do anything other than calm her down and ask her to slow down. Appellant admitted at the end of Ms. Russo's lesson, he told her he was sorry if he had gone to far in trying to comfort her and in talking to her. He further testified he should have stopped a conversation Ms. Russo initiated about boys and sex.
 {¶ 23} After hearing all the testimony, the jury found appellant guilty of each count. In a December 14, 2001 Judgment Entry, the trial court sentenced appellant to one year on the first, one year on the second count, and seventeen months on the third count. Further, the trial court ordered the sentences be served consecutively.
 {¶ 24} It is from that judgment entry appellant prosecutes this appeal, raising the following assignments of error for our review:
 {¶ 25} "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S OBJECTIONS AND ALLOWING TESTIMONY REGARDING TRAUMA SUFFERED BY ONE OF THE ALLEGED VICTIMS.
 {¶ 26} "II. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTIONS FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.
 {¶ 27} "III. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 28} "IV. THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY REGARDING THE DEFINITION OF FORCE WHEN IT PROVIDED THE JURY WITH A DEFINITION OF FORCE OTHER THAN THE DEFINITION FOUND IN REVISED CODE SECTION 2901.01(A)(1)."
 I {¶ 29} In appellant's first assignment of error, he maintains the trial court erred in permitting Ms. Luzio to testify about psychological difficulties she claimed she began to experience after the incident with appellant. Appellant maintains this evidence was irrelevant to the crime of gross sexual imposition and therefore, should have been excluded. We disagree.
 {¶ 30} Evid.R. 401 defines relevant evidence to mean "evidence having any tendency to make the existence of any fact that is a consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is admissible while irrelevant evidence is inadmissible. Evid.R. 402.
 {¶ 31} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 32} We find this testimony was relevant to Ms. Luzio's credibility. Ms. Luzio's testimony about her psychological state after the incident had the tendency to make her story, and therefore the existence of the crime, more probable than not. We find no abuse of discretion in the trial court's decision to admit such evidence.
 {¶ 33} Appellant's first assignment of error is overruled.
 II, III, IV {¶ 34} In appellant's second assignment of error, he maintains the trial court erred in overruling his motion for acquittal pursuant to Crim.R. 29. In appellant's third assignment of error, he maintains the jury's verdict was against the manifest weight of the evidence. Specifically, appellant maintains the State presented no evidence regarding the issue of force or sexual arousal or gratification. Further, appellant contends any evidence of force was insufficient under the statutory definition contained in R.C. 2901.01(A)(1) to constitute force. In appellant's fourth assignment of error, he maintains the trial court erred in instructing the jury with a definition of force other than the definition found in R.C. 2901.01(A)(1). We disagree with appellant's contentions. Because these issues are interrelated, we address them together.
 {¶ 35} Crim.R. 29(A) provides: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 36} Crim.R. 29(A) provides:
 {¶ 37} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 38} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 39} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 40} Appellant was charged with three counts of Gross Sexual Imposition in violation of R.C. 2907.05(A)(1). The statue provides, in relevant part:
 {¶ 41} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 42} The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
 {¶ 43} Sexual contact is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 44} As stated above, appellant asserts the state presented no evidence of sexual arousal or gratification.
 {¶ 45} There is no requirement that there be direct testimony regarding sexual arousal or gratification. State v. Astley (1987),36 Ohio App.3d 247, 523 N.E.2d 322; State v. Cobb (1991),81 Ohio App.3d 179, 610 N.E.2d 1009; In Re Anderson (1996),116 Ohio App.3d 441, 688 N.E.2d 545; State v. Brady (July 9, 2001), Stark App. No. 2000CA00223, 2001 WL 815574. In the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer appellant was motivated by desires for sexual arousement or gratification from the "type, nature and circumstances of the contact, along with the personality of the defendant." State v. Cobb (1991),81 Ohio App.3d at 185; State v. Brady, supra (citing Cobb).
 {¶ 46} In the case sub judice, we find there is sufficient evidence from which the jury could have inferred appellant's motive was sexual arousal or gratification. The victims each testified appellant initiated conversations about sex immediately surrounding the offending conduct. Further, appellant also asked one victim how she would feel if she awoke to find him in bed with her. We find this evidence sufficient for an inference the sexual contact was accomplished for the purpose of sexual arousal or gratification.
 {¶ 47} Appellant also takes issue with the definition of force used by the trial court, and claims the State failed to produce any evidence of force.
 {¶ 48} Force is defined in R.C. 2907.01(A)(1) to mean "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." In State v. Eskridge (1988),38 Ohio St.3d 56, the Ohio Supreme Court expanded this definition in a case involving the rape of a four year old child by her father. Therein, the Supreme court held:
 {¶ 49} "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength. (State v. Labus [1921], 102 Ohio St. 26, 38-39, 130 N.E. 161, 164.)" Id. par. 1 of the syllabus.
 {¶ 50} Later, in State v. Schaim (1992), 65 Ohio St.3d 51,600 N.E.2d 661, the Supreme Court again expanded the definition of force in the context of a pattern of incest between a father and his twenty-year-old daughter. Although the Court found the State did not prove the elements of forcible rape, it held:
 {¶ 51} "[a] defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct, but a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her. (State v. Eskridge [1988], 38 Ohio St.3d 56, 526 N.E.2d 304, distinguished.)" (Emphasis added.) Id., at paragraph one of the syllabus.
 {¶ 52} The Supreme Court expanded the definition again in Statev. Dye, 1998-Ohio-234, 82 Ohio St.3d 323, wherein the court held: "A person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C.2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." Id. at par. 1 of syllabus.
 {¶ 53} In the matter sub judice, the trial court instructed the jury on the definition of force as follows:
 {¶ 54} "Force means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. Where the relationship between the victim and the Defendant is one of child and parent or other authority figure, the element for force need not be openly displayed or physically brutal.
 {¶ 55} "It can be subtle and psychological. If you find beyond a reasonable doubt that under the circumstances in evidence, the victim's will was overcome by fear or duress or intimidation, the element of force has been proved. Threat includes a direct threat and a threat by innuendo. The victim need not prove physical resistance to defendant."
 {¶ 56} Clearly, the language of the jury instruction was drawn from the above-cited Supreme Court cases. However, as set forth above, the factual situation in the matter sub judice is different from the child rape cases addressed by the Supreme Court. Notwithstanding the factual differences, we find the jury instruction, as given, was appropriate in light of the specific facts herein.
 {¶ 57} The minors involved in this case are younger from the twenty-year old adult the Supreme Court faced in Schaim, but neither were they children of tender years. Although not a parent, or in loco parentis, appellant was certainly in a position of authority, and held a certain amount of power over an undoubtedly coveted prize to a child of fifteen-and-a-half of a driver's license. Each of the girls testified the conduct took place within the car; a closed environment with no easily accessible escape given the circumstances. The girls testified this conduct occurred while they were driving in deserted areas, unfamiliar to them. All of the girls testified they thought of stopping the car and getting out, but ultimately decided against it because of the bad weather, the unfamiliar area or what they believed appellant's reaction to the situation would be. While an adult might have managed the situation differently, our society does not generally expect a fifteen-year-old to have the emotional or practical experience necessary to face such a situation. Given all of the circumstances surrounding this case, we find no error in the trial court's force instruction.
 {¶ 58} In light of this discussion, and given the facts set forth, supra, we further find the State produced sufficient evidence on each element of gross sexual imposition to support the jury's verdicts.
 {¶ 59} Appellant' second, third and fourth assignments of error are overruled.
 V. {¶ 60} As noted above, appellant's fifth assignment of error attacks the trial court's sentence. However, appellant's brief sets forth no argument relative to this assignment. For this reason, appellant's fifth assignment is summarily overruled. App.R. 16(A)(7).
 {¶ 61} The December 17, 2001 Judgment Entry of the Delaware County Court of Common Pleas is affirmed.
By: Hoffman, P.J., Farmer, J. and Wise, J. concur.
topic: relevant evidence; GSI-force, evid of sexual arousal sufficient; jury instruction force acceptable under circumstances.