OPINION
{¶ 1} Defendant-appellant, Freeman C. Jackson, was indicted by the Franklin County Grand Jury as follows: four counts of gross sexual imposition, in violation of R.C. 2907.05, fourth-degree felonies; six counts of rape, in violation of R.C. 2907.02, first-degree felonies; three counts of corruption of a minor, in violation of R.C. 2907.04, fourth-degree felonies; and three counts of kidnapping, in violation of R.C. 2905.01, first-degree felonies. Prior to the commencement of the trial, the state dismissed one count of rape and one count of kidnapping. Following a jury trial, appellant was found guilty of the remaining charges and sentenced accordingly.
 {¶ 2} On appeal, appellant sets forth the following two assignments of error:
 {¶ 3} "I. The jury's verdicts were not supported by sufficient evidence, thereby depriving appellant of a fair trial and due process of law.
 {¶ 4} "II. The trial court abused its discretion in denying appellant's criminal rule 29 motion to dismiss certain counts in the indictment, thereby depriving him of a fair trial and due process of law."
 {¶ 5} Appellant's convictions were based upon testimony adduced at trial concerning sexual conduct on the part of appellant with Jacquita McDowell, the thirteen-year-old niece of appellant's live-in girlfriend, and Khadijah Akil, the eight-year-old daughter of appellant's live-in girlfriend. Jacquita testified that in June of 1999, she was alone in the bedroom of her aunt's house watching television. Appellant entered the bedroom and told her that "he needed some." Appellant proceeded to pull Jacquita's pants down to her shins, pin her arms down on the bed, and began performing oral sex on her. Jacquita testified that after a few minutes, appellant "stuck his penis in my vagina." Jacquita testified that she was not able to get away from appellant. After a certain amount of time, appellant stopped and left the room. Jacquita testified further that some time later that summer, while she was taking a shower, she heard appellant pop the lock on the bathroom door and enter the bathroom. Jacquita testified that she told appellant to leave the bathroom but he did not. Instead, she testified that appellant "just told me what he had to do." At that time, Jacquita testified that appellant laid her down on the bathroom floor and "[h]e forced himself on me, put his penis in my vagina." At the time of these events, Jacquita did not tell anyone what had happened. She testified that she was scared. Some time in 2001, Jacquita had a telephone conversation with her brother. Thereafter, her mother became concerned about her and eventually Jacquita told what had happened to her.
 {¶ 6} Khadijah testified concerning an incident that happened involving appellant. Khadijah had finished taking a bath and was sitting on the bed naked. The following exchange took place between Khadijah and the prosecuting attorney:
 {¶ 7} "Q. What did he do?
 {¶ 8} "A. He looked at my peepee.
 {¶ 9} "* * *
 {¶ 10} "Q. He looked in your peepee?
 {¶ 11} "A. Yes.
 {¶ 12} "Q. Okay. And how did he do that? You can look at me.
 {¶ 13} "A. With his finger.
 {¶ 14} "Q. With his finger?
 {¶ 15} "A. Yes, Ma'am.
 {¶ 16} "Q. Okay. And was he standing or was he kneeling or sitting? How was he?
 {¶ 17} "A. (No response)
 {¶ 18} "Q. Let me ask, Khadijah, he looked in your peepee with his finger. Okay. He was bending over?
 {¶ 19} "A. Yes.
 {¶ 20} "Q. Did he say anything to you?
 {¶ 21} "A. I forgot what he said.
 {¶ 22} "Q. Okay. You forgot what he said?
 {¶ 23} "A. Yes, Ma'am.
 {¶ 24} "Q. Okay. And, what did he do with his finger then?
 {¶ 25} "A. He just looked in there.
 {¶ 26} "* * *
{¶ 27 "Q. He looked in there. Okay. Did his finger touch your skin?
 {¶ 28} "A. Yes.
 {¶ 29} "Q. Did he touch any other place?
 {¶ 30} "A. No, Ma'am."
 {¶ 31} In response to whether or not anything else had happened with appellant that made Khadijah feel uncomfortable, the following exchange took place:
 {¶ 32} "Q. Okay. Now, has [he] ever done anything else that made you uncomfortable?
 {¶ 33} "* * *
 {¶ 34} "A. Yes, Ma'am.
 {¶ 35} "Q. What was that that he did?
 {¶ 36} "A. Playing a tickle game. He locked Malik out of the room.
 {¶ 37} "Q. Yes. He locked Malik out of the room and he played a tickle game?
 {¶ 38} "A. Yes.
 {¶ 39} "Q. How did you know that Malik got locked out of the room?
 {¶ 40} "A. Because he pulled him out of the room and he put his feet against the door.
 {¶ 41} "Q. He pulled Malik out of the room and — speak up a little bit.
 {¶ 42} "A. Put his feet against the door. I don't know if it was locked, just put his feet against the door.
 {¶ 43} "Q. His feet were up against the door. What happened then?
 {¶ 44} "A. Then he put me under the covers.
 {¶ 45} "Q. He put you under the covers?
 {¶ 46} "A. Yes, Ma'am.
 {¶ 47} "Q. Was he under the covers with you?
 {¶ 48} "A. Yes, Ma'am.
 {¶ 49} "Q. Okay. Did you have clothes on at this time?
 {¶ 50} "A. Yes, Ma'am.
 {¶ 51} "Q. What happened then, Khadijah?
 {¶ 52} "A. He just went up and down.
 {¶ 53} "Q. How was his body — what do you mean he went up and down?
 {¶ 54} "A. Like this (indicating).
 {¶ 55} "Q. Okay. For the record, the witness has got one hand over top of the other. Was he moving up and down there?
 {¶ 56} "A. Yes.
 {¶ 57} "Q. Was he on top of you or were you on top of him?
 {¶ 58} "A. He was on top of me.
 {¶ 59} "Q. Did he say anything while he was doing this?
 {¶ 60} "A. Yes, Ma'am.
 {¶ 61} "Q. What did he say?
 {¶ 62} "A. I'm so sexy.
 {¶ 63} "Q. Did everybody hear? Can you say that again?
 {¶ 64} "A. I'm so sexy."
 {¶ 65} Khadijah ended up telling her mom what had happened.
 {¶ 66} Gail Horner, a pediatric nurse practitioner at Children's Hospital, testified concerning her interview and examination of Khadijah. Ms. Horner testified that Khadijah told her that appellant had placed his finger inside her vagina. Ms. Horner testified that, upon medical examination, Khadijah's genital area appeared normal and that her hymen was intact. Ms. Horner testified that the hymen is elastic in nature and that the examination itself was consistent with the history Khadijah had given.
 {¶ 67} Appellant testified and denied that anything inappropriate had ever happened between him and the two girls.
 {¶ 68} Appellant's assignments of error are interrelated and will be addressed together.
 {¶ 69} In his first assignment of error, appellant argues that the jury's verdict was not supported by sufficient evidence. In his second assignment of error, appellant argues that the trial court abused its discretion in denying his Crim.R. 29 motion to dismiss certain counts in the indictment.
 {¶ 70} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, at 113.
 {¶ 71} Under Crim.R. 29, a trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. "A motion for judgment of acquittal under Crim.R. 29(A) should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987),33 Ohio St.3d 19, 23. Thus, the test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on the sufficiency of the evidence to support a conviction. State v. Thompson (1998), 127 Ohio App.3d 511, 525.
 {¶ 72} R.C. 2907.05 pertains to the offense of gross sexual imposition and provides, in pertinent part, as follows:
 {¶ 73} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 74} "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.
 {¶ 75} "* * *
 {¶ 76} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
 {¶ 77} "* * *
 {¶ 78} "(B) Whoever violates this section is guilty of gross sexual imposition. Except as otherwise provided in this section, a violation of division (A)(1) * * * of this section is a felony of the fourth degree. * * * A violation of division (A)(4) of this section is a felony of the third degree."
 {¶ 79} R.C. 2907.02 pertains to the offense of rape and provides, in pertinent part, as follows:
 {¶ 80} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 81} "* * *
 {¶ 82} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 {¶ 83} "* * *
 {¶ 84} "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
 {¶ 85} "(B) Whoever violates this section is guilty of rape, a felony of the first degree. * * * If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."
 {¶ 86} R.C. 2905.01 pertains to the offense of kidnapping and provides, in pertinent part, as follows:
 {¶ 87} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 88} "* * *
 {¶ 89} "(3) To terrorize, or to inflict serious physical harm on the victim or another;
 {¶ 90} "(4) To engage in sexual activity, as defined in section2907.01 of the Revised Code, with the victim against the victim's will[.]"
 {¶ 91} R.C. 2907.04 pertains to the offense of corruption of a minor and provides, in pertinent part, as follows:
 {¶ 92} "(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.
 {¶ 93} "(B) Whoever violates this section is guilty of unlawful conduct with a minor.
 {¶ 94} "(1) Except as otherwise provided * * * unlawful conduct with a minor is a felony of the fourth degree."
 {¶ 95} "Sexual conduct," "sexual contact," and "sexual activity" are defined in R.C. 2907.01 as follows:
 {¶ 96} "(A) `Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex * * * the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
 {¶ 97} "(B) `Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
 {¶ 98} "(C) `Sexual activity' means sexual conduct or sexual contact, or both."
 {¶ 99} Appellant was convicted of nine separate counts involving then thirteen-year-old Jacquita. Those counts were as follows: count one: gross sexual imposition; count two: rape; count three: rape; count four: corruption of a minor; count five: corruption of a minor; count six: kidnapping; count seven: rape; count eight: corruption of a minor and count nine: kidnapping. Counts one through six were alleged to have occurred between June 1 and June 30, 1999, while counts seven through nine were alleged to have occurred between July 1 and August 31, 1999.
 {¶ 100} This court finds that the evidence presented at trial was sufficient to establish that appellant had committed the above offenses. Jacquita specifically testified that appellant performed oral sex on her as well as vaginal intercourse on one particular occasion while he held down her arms. From this evidence, appellant was convicted of two counts of rape, one count of gross sexual imposition, one count of kidnapping, and two counts of corruption of a minor. These offenses occurred in June 1999 while Jacquita was in the bedroom. Jacquita also testified regarding a second incident, which happened later in the summer when appellant had vaginal intercourse with her in the bathroom after she had taken a shower. Jacquita testified that appellant laid her on the floor and that she was not able to get away. From this evidence, the jury convicted appellant of one count of rape, one count of kidnapping, and one count of corruption of a minor. This court finds that the evidence presented was sufficient as a matter of law to support the convictions. Based upon her testimony, the state presented sufficient evidence that these offenses actually occurred.
 {¶ 101} Appellant also argues that, even when construing the evidence most strongly in favor of the state, he committed only three sex offenses. However, appellant asserts the jury convicted him of six sexual offenses involving Jacquita in count one (gross sexual imposition), count two (rape), count three (rape), count six (kidnapping), count seven (rape), and count nine (kidnapping).
 {¶ 102} R.C. 2941.25 governs allied offenses and provides:
 {¶ 103} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 104} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 105} In State v. Savage, Franklin App. No. 02AP-202, 2002-Ohio-6837, the defendant contended that his convictions for kidnapping and robbery were in error because the offenses are allied offenses of similar import. This court noted as follows:
 {¶ 106} "Under an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract." (Emphasis sic.) State v. Rance (1999),85 Ohio St.3d 632, paragraph one of the syllabus, overruling Newark v. Vazirani (1990), 48 Ohio St.3d 81. "Courts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.' * * * And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." Rance, at 638-639. (Citation omitted.)
 {¶ 107} "* * *
 {¶ 108} "However, subsequent to Rance, in State v. Fears (1999),86 Ohio St.3d 329, 344, certiorari denied (2000), 529 U.S. 1039,120 S.Ct. 1535, the Ohio Supreme Court, in concluding that a kidnapping specification should have merged with an aggravated robbery specification in a capital case, reaffirmed the merger doctrine it announced in State v. Jenkins (1984), 15 Ohio St.3d 164, certiorari denied (1985),472 U.S. 1032, 105 S.Ct. 3514, rehearing denied (1985), 473 U.S. 927,106 S.Ct. 19, when it noted:
 {¶ 109} "In Jenkins at 198, 15 OBR at 340, 473 N.E.2d 264 at 295, fn. 29, we stated that `implicit within every robbery (and aggravated robbery) is a kidnapping.' Therefore, a kidnapping specification merges with an aggravated robbery specification unless the offenses were committed with a separate animus. R.C. 2941.25(B). Thus, when a kidnapping is committed during another crime, there exists no separate animus where the restraint or movement of the victim is merely incidental to the underlying crime. State v. Logan (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, syllabus. However, where the restraint is prolonged, the confinement is secretive, or the movement is substantial, there exists a separate animus as to each offense. Id. See, also, Jenkins at 198, quoting Logan, supra, at 135 (`As the Logan court recognized, the critical consideration is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense' ").
 {¶ 110} In Savage, this court concluded that any restraint or movement of the victim was merely incidental to the underlying crime of aggravated robbery. Therefore, under Fears and Jenkins, this court found that appellant did not act with a separate animus when he restrained the victim's liberty during the course of the aggravated robbery. As such, the kidnapping conviction was impermissibly cumulative and should have merged with the aggravated robbery conviction.
 {¶ 111} Upon review of the record, this court finds that all three rape convictions involving Jacquita were committed with a separate animus but that the gross sexual imposition, kidnapping, and corruption of a minor counts were allied offenses of similar import to the rape convictions and that they were neither committed separately nor with a separate animus as to the rapes. The statutory elements of these crimes correspond to such a degree that the commission of the rapes resulted in the commission of the other offenses. As such, this matter must be remanded to the trial court for resentencing.
 {¶ 112} Appellant makes the same arguments with regard to his convictions concerning Khadijah.
 {¶ 113} Upon review of the record, this court finds there was sufficient evidence for the jury to convict appellant on two counts of gross sexual imposition as they pertained to Khadijah. The first incident involved appellant inserting his finger into Khadijah's vagina and the second incident involved appellant laying on top of Khadijah and rubbing his body up against hers. Both incidents involved appellant having sexual contact with Khadijah, who was not his spouse, and who was under thirteen years of age. Sexual contact is defined as any touching of an erogenous zone, including without limitation the thigh, genitals, buttocks, pubic region, or, breasts, for the purpose of sexually arousing or gratifying either person. Khadijah's testimony alone is sufficient to sustain these convictions. However, after careful review of the record, there is no evidence to support a conviction on a third count of gross sexual imposition involving appellant and Khadijah.
 {¶ 114} With regard to the rape count, the evidence clearly shows that appellant inserted his finger into Khadijah's vagina. In order to constitute rape, the insertion, however slight, of any part of the body into the vagina cavity is sufficient to sustain a conviction for a count of rape. The evidence in the record as testified to by Khadijah was sufficient for the jury to convict appellant of rape. However, the jury also found appellant guilty of using force in the commission of that rape. This court disagrees.
 {¶ 115} R.C. 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The Ohio Supreme Court considered the issue of force in State v. Eskridge (1988), 38 Ohio St.3d 56, where the defendant was convicted of raping his four-year-old daughter by force. The court stated as follows in the syllabus:
 {¶ 116} "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength. (State v. Labus [1921], 102 Ohio St. 26, 38-39.)"
 {¶ 117} In Eskridge, the defendant had removed the child's panties and laid her on the bed. The court found that these were both acts of compulsion and constraint, which are independent of the act of rape.
 {¶ 118} In State v. Dye (1998), 82 Ohio St.3d 323, syllabus, the court held as follows: "A person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint."
 {¶ 119} In Dye, the court found that the defendant had been an important figure of authority in the life of a nine-year-old boy, that the boy's mother had told him to mind the defendant and not to aggravate him, and that the defendant had told the boy that he had to keep the sex a secret.
 {¶ 120} In State v. Stokes (1991), 72 Ohio App.3d 735, the child was eight years old and the defendant was her father. The court found that with the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required where the parties are more nearly equal in age, size and strength. The child had testified that the defendant had hurt her and that she had asked him to stop; however, the defendant told her to be quiet and threaten that he would hurt her mother if she ever told what happened. The court found that the element of force was met in that case.
 {¶ 121} In the present case, there is no evidence of a parent child relationship between Khadijah and appellant. The record does not indicate that appellant was an authority figure in the house, even though appellant had been living with Khadijah's mother. Furthermore, there is no evidence that appellant moved Khadijah or held her down when he inserted his finger into her vagina. Inasmuch as Khadijah was already undressed and naked, there was no clothing, which appellant removed and Khadijah testified that appellant did not touch her in any other place other than to place his finger inside her vagina. While this court recognizes the offense of rape is an act of force and violence in and of itself, the courts have made it clear that, in order to sustain a rape conviction of a child under thirteen with the additional element of force, there must be some force or compulsion in addition to the act of rape itself in order to sustain a conviction with the added element of force. This court finds that the record is insufficient to support a finding as to force.
 {¶ 122} Appellant was also convicted of kidnapping with regard to Khadijah and this court finds that the evidence is sufficient to sustain that conviction. Kidnapping is committed, in the case of a victim under the age of thirteen, when a person, by any means, removes that other person from a place where the person is found or restrains the liberty of the other person to engage in sexual activity. When appellant laid himself on top of Khadijah and rubbed his body up against hers, she testified that she was not able to move. This is sufficient to sustain the conviction of kidnapping.
 {¶ 123} This court must now address the question of whether these convictions were allied offenses of similar import and whether they were committed separately or with a separate animus. Specifically, this court finds that the rape conviction and one gross sexual imposition conviction constitute allied offenses of similar import and that they were neither committed separately nor with a separate animus. Likewise, the kidnapping conviction and the other gross sexual imposition conviction constitute allied offenses of similar import and they were neither committed separately nor with a separate animus. Again, the statutory elements of these crimes correspond to such a degree that the commission of the rape and the kidnapping resulted in the commission of the crimes of gross sexual imposition. As such, this matter must be remanded to the trial court for resentencing.
 {¶ 124} Based upon the foregoing, this court finds that the evidence was insufficient to convict appellant on one count of gross sexual imposition as it applies to Khadijah and was insufficient to support a finding of force as it applies to count thirteen of the indictment. In all other respects, this court finds that the evidence was sufficient to convict appellant of the remaining counts. However, based upon the finding that several of these convictions constitute allied offenses of similar import which were neither committed separately nor with a separate animus, this matter must be remanded for resentencing.
 {¶ 125} As such, appellant's assignments of error are sustained in part and overruled in part. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for resentencing consistent with this opinion.
Judgment affirmed in part and reversed in part; case remanded for resentencing.
PETREE and BRYANT, JJ., concur.