[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 323.]

THE STATE OF OHIO, APPELLANT, *v.* DYE, APPELLEE.

[Cite as *State v. Dye*, 1998-Ohio-234.]

*Criminal law—Rape—Degree of force and violence necessary to commit crime of rape of a child varies, when—Under totality of circumstances, person who stands in same position over a child as a parent may be convicted of rape of a child under thirteen with force pursuant to R.C. 2907.02A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint.*

A person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint.

(No. 97-851—Submitted March 25, 1998—Decided July 8, 1998.)

APPEAL from the Court of Appeals for Summit County, No. 17763.

———————————

{¶ 1} Michael Dye, defendant-appellee, was friends with Joyce W. Dockus for approximately seven years. Joyce trusted the defendant with her three sons and would allow them to go over to his apartment. Beginning in December 1994, Joyce's son, David, age nine, went over to the defendant's apartment about every week and spent the night.

{¶ 2} On July 22, 1995, David was at home, where he resided with his mother, Joyce, his mother's live-in boyfriend, Gene Scritchfield, and his other two brothers, Tommy and Terry. The defendant called the house and asked David to come over for a few hours, but David told the defendant he would have to ask Gene. When David handed the telephone to Gene, Gene overheard the defendant say,

"David, are you going to come over and suck my dick?" Gene told the defendant that was no way to talk to a child, and he hung up on the defendant.

{¶ 3} When Joyce returned home later that evening, Gene repeated the incident to her. When Joyce questioned David, he started to cry and told his mother that the defendant had made him "suck his thing with his mouth." Upset, Joyce took Gene, her two brothers, her older daughter, and her three sons and went over to the defendant's residence to confront him. At the defendant's residence, a fight erupted between the parties. The details are unclear, but apparently Joyce struck the defendant during the confrontation. Police were called to the scene, and Joyce reported the allegations against the defendant.

{¶ 4} Upon the advice of police, Joyce took David to the hospital. Dr. Narges Daliri, the attending physician in the emergency room, examined David that same evening, July 22, 1995. David told Dr. Daliri that the defendant "had been putting his weenie in [David's] butt," and "[had been] playing with his weenie and making [David] play with his weenie." David told Dr. Daliri that this had been happening since December 1994. Dr. Daliri's physical examination revealed a healed fissure in David's anal region, as well as decreased sphincter tone for a child David's age. Further, a rape protocol was performed and samples were taken. However, the kit was later inadvertently destroyed by the police department.

{¶ 5} A social worker, Elizabeth Morstatter, also interviewed David on July 22, 1995. David told her that the first time the sexual contact occurred was the day after Christmas. David told her that he was in the defendant's bedroom when the defendant started "rubbing on his weenie," pulled David's pants down, and then pulled his own pants down. David also told Morstatter that the defendant had "put David's weenie in his mouth," that defendant once gave him $5, and that the defendant would sometimes give him red wine that he kept in a locked cabinet by his bed. In addition, David told Morstatter that the defendant had been his friend.

**{¶ 6}** A few days after the examination at the hospital, Detective Edward L. Mathews, a juvenile detective from the Akron Police Department, interviewed David, Joyce, and Gene. David told the detective that, in addition to the above allegations, the defendant had also digitally penetrated him. Based on the interviews, Detective Mathews obtained warrants for the defendant and arrested him.

**{¶ 7}** The defendant was indicted on August 18, 1995, on five counts of rape and five counts of felonious sexual penetration, each with the specification that the defendant had used or threatened force. At trial, Detective Mathews testified that the defendant denied any sexual involvement with David, but did not dispute that David spent the night with him frequently. Detective Mathews testified that the defendant told him that he and David slept together on the couch and that the "front parts" of their bodies would touch. The defendant told Detective Mathews that when he woke up in the morning he would sometimes find his fly unzipped and he had "no idea what David might have done to him."

**{¶ 8}** At trial, David testified that the first time the defendant touched him, he was lying in the defendant's bed and the defendant started pulling down his pants and touching him on his "weenie." David testified that the defendant turned him over and David asked him twice what he was doing, but the defendant did not say anything. David testified that the defendant told him that this was to be a secret and then he turned David over and "put his weenie up [his] butt." Then, David testified that the defendant turned him back around and start[ed] "sucking on my thing, my weenie, and then he started making me suck on his weenie." When asked why he kept going back to the defendant's apartment, David replied, "because I let him do it to me long enough where I know he is going to go to jail for a long time if he becomes guilty."

**{¶ 9}** David's mother, Joyce, testified that she trusted the defendant with her children and would allow them to go over to his residence. She testified that

the defendant was a friend of hers.  When she dropped David off at the defendant's residence, Joyce testified that she told David to be good and mind the defendant, and if he did not that she would come and pick him up.

**{¶ 10}** During trial, the defendant moved for dismissal of the felonious sexual penetration charges and the force specifications.  The court dismissed two counts of felonious sexual penetration, based on David's testimony during trial that the defendant had inserted his finger into David's anus "about three" times.  The court denied the defendant's motion to dismiss the force specifications.

**{¶ 11}** The jury returned guilty verdicts on all five counts of rape and the three remaining counts of felonious sexual penetration, with a force specification on each count.  The trial court sentenced the defendant to life imprisonment on each count.  The court of appeals affirmed the defendant's convictions, but reversed his life sentences, finding insufficient evidence of force.

**{¶ 12}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

––––––––––––––––––

*Maureen O'Connor*, Summit County Prosecuting Attorney, and *Philip D. Bogdanoff*, Assistant Prosecuting Attorney, for appellant.

*C. Michael Walsh*, for appellee.

––––––––––––––––––

**Lundberg Stratton, J.**

**{¶ 13}** The issue presented in this case is whether a person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint.  For the reasons stated below, we answer in the affirmative.

**{¶ 14}** R.C. 2907.02 provides:

"(A)(1)  No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

" * * *

"(b)  The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

" * * *

"(2)  No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

"(B)  Whoever violates this section is guilty of rape, an aggravated felony of the first degree.  * * *  If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."

**{¶ 15}** R.C. 2901.01(A) defines the element of force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

**{¶ 16}** This court considered the issue of force in *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304.  In *Eskridge*, the defendant was convicted of raping his four-year-old daughter by force.  This court reinstated the defendant's conviction and held that "[t]he force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other.  With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength.  (*State v. Labus* [1921], 102 Ohio St. 26, 38-39, 130 N.E. 161, 164.)"  *Id.*, paragraph one of the syllabus.

**{¶ 17}** In *Eskridge*, the victim testified that the defendant removed her panties, and there was testimony that he laid her on the bed, both acts of compulsion

and constraint that we found were independent of the act of rape. *Id.*, 38 Ohio St.3d at 58, 526 N.E.2d at 306. Further, we emphasized the age difference and disparity in size between the defendant, a twenty-eight-year-old man, and the victim, a four-year-old child. We held that "[a] four-year-old child cannot consent to sexual conduct" and "[t]he victim * * * did not and could not have participated in the sexual conduct on her own free will." *Id.*

{¶ 18} *Eskridge* involved a father-child relationship, and we noted that the " 'youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.' " *Id.*, 38 Ohio St.3d at 59, 526 N.E.2d at 307, quoting *State v. Etheridge* (1987), 319 N.C. 34, 47, 352 S.E.2d 673, 681. We concluded that the defendant father held a position of authority over the victim daughter which did not require any explicit threats or displays of force. *Id.*

{¶ 19} Later, in *State v. Schaim* (1992), 65 Ohio St.3d 51, 600 N.E.2d 661, we considered force in the context of a pattern of incest between a father and his twenty-year-old daughter. In finding that the state did not prove the elements of forcible rape, we held that "[a] defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. *A threat of force can be inferred from the circumstances surrounding sexual conduct*, but a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her. (*State v. Eskridge* [1988], 38 Ohio St.3d 56, 526 N.E.2d 304, distinguished.)" (Emphasis added.) *Id.*, at paragraph one of the syllabus.

{¶ 20} Although we found insufficient evidence of force in *Schaim*, we recognized *Eskridge*'s continuing application in cases involving young children:

"*State v. Eskridge* is based solely on the recognition of the amount of control that parents have over their children, particularly young children." *Id.*, 65 Ohio St.3d at 55, 600 N.E.2d at 665. We concluded that "[b]ecause of the child's dependence on his or her parents, a child of tender years has no real power to resist his or her parent's command, and every command contains an implicit threat of punishment for failure to obey." *Id.*

{¶ 21} We recognize that it is nearly impossible to imagine the rape of a child without force involved. Clearly, a child cannot be found to have consented to rape. However, in order to prove the element of force necessary to sentence the defendant to life imprisonment, the statute requires that some amount of force must be proven beyond that force inherent in the crime itself. Yet " '[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.' " *Eskridge*, 38 Ohio St.3d at 58-59, 526 N.E.2d at 306, citing *State v. Fowler* (1985), 27 Ohio App.3d 149, 154, 27 OBR 182, 187, 500 N.E.2d 390, 395. In fact, R.C. 2907.02(B) requires only that minimal force or threat of force be used in the commission of the rape. *Id.*, 38 Ohio St.3d at 58, 526 N.E.2d at 306.

{¶ 22} In examining the age, size, and strength of the parties and their relation to each other, we clearly find sufficient evidence of force. We found insufficient evidence of force in *Schaim*, but that case involved a twenty-year-old adult who was no longer completely dependent on her parents and was more nearly her father's equal in size, strength, and mental resources. In the present case, at the time of the rapes, the defendant was forty-four years old, while David was nine. Further, there was a clear disparity in the relative size and strength of the defendant and David. The defendant was a five-foot, nine-inch, one-hundred-thirty-five-pound man, while David was an approximately seventy-seven-pound child. In addition, David told Morstatter that the defendant said to him "he wouldn't be [his]

friend" if David told (someone about the abuse) and that David thought the defendant might hit him.

{¶ 23} Aside from the evidence of physical force, the evidence of psychological force is substantial. The defendant contends that *Eskridge* may be distinguished due to the absence of a parent-child relationship between the defendant and David. We disagree. In *Eskridge* there was " 'a child being told to do something by an important figure of authority, and commanded not to tell anyone about it.' " *Id.*, 38 Ohio St.3d at 59, 526 N.E.2d at 306, quoting *Fowler*, 27 Ohio App.3d at 154, 27 OBR at 187, 500 N.E.2d at 395. Consequently, we found nothing unreasonable about a finding that the child's will was overcome and the forcible element of rape was properly established. *Id.*

{¶ 24} In the present case, nine-year-old David was forced to submit to the authority of a forty-four-year-old man who was not his parent, but who stood in a position of authority over him. David's mother had known the defendant for seven years and David had maintained a close relationship with the defendant over that time, visiting and staying at the defendant's residence approximately once a week. David considered the defendant to be his friend until these events occurred. Clearly, the defendant was an important figure of authority in David's life. In addition, just as in *Fowler,* the defendant told David to keep the sexual abuse a secret.

{¶ 25} Most important, when David's mother dropped David off at the defendant's residence or when the defendant picked David up and took him to his home, David's mother told him to mind the defendant, and not to aggravate him, or she would come and pick him up or the defendant would bring him home. The defendant claims that because this punishment or threat of punishment came from David's mother and not the defendant himself, this somehow lessens the position of authority the defendant had over David. We find no rationale for this distinction.

The defendant was clearly the authority figure to David when David was at the defendant's home, which is where the sexual conduct took place.

{¶ 26} Further, the defendant urges this court to make a distinction between biological parents (or other family members) who sexually abuse their children, and all other sexual abusers. Again, we see no reason for such a distinction. Unfortunately, due to divorce and custody arrangements, some children may see their biological parent(s) only once every few months or not at all, yet may spend eight to ten hours a day with a nonparental caregiver. Further, parents often leave their children in the care of others for a variety of reasons. When parents tell their children that the caregiver is in charge and that the children should mind the caregiver, that caregiver occupies the same position of authority as the parent traditionally would. Thus, to make a distinction on the basis of biology is wholly inappropriate and ignores the realities of our society.

{¶ 27} The evidence showed that David's mother told him that the defendant was in charge and David should mind him. Further, the evidence showed that while David was at the defendant's house, the defendant would fondle David's genitalia, turn David around and pull his pants down, sit on a bed and make David sit on his lap, or tell David to crouch before engaging in sex with him, make David engage in oral sex with him, and tell David to keep the sex a secret. Nonetheless, the court of appeals found this evidence was insufficient for a finding of force since a parent was not involved. We disagree.

{¶ 28} We hold that a person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint.

{¶ 29} Weighing the credibility of the witnesses was the job of the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. David's testimony, if believed, demonstrated a threat of force by the defendant

sufficient to satisfy the requirements of R.C. 2907.02(A)(1)(b) and (B). Viewing the evidence presented by the state at trial in a light most favorable to the prosecution, a rational trier of fact could have found all of the elements of rape of a child under thirteen proven beyond a reasonable doubt, including the use of force or threat of force. Accordingly, we reverse the judgment of the court of appeals and reinstate the defendant's convictions and life sentences.

*Judgment reversed.*

MOYER, C.J., RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS and COOK, JJ., concur separately.

_____

**Cook, J., concurring.**

{¶ 30} I concur in the judgment of the majority. I would not modify *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, but would reconcile this case with Eskridge, using the following syllabus language:

{¶ 31} Assessment of whether the defendant has compelled the victim to submit by an implicit threat of force under R.C. 2907.02(B) and *State v. Eskridge* requires a comparison of the age, size, and strength of the parties and their relation to each other. Even where the relationship between the defendant and the child victim is not one of parent and child, in assessing the totality of the circumstances, the factfinder may consider whether the defendant was an important figure of authority to the child victim. (*State v. Eskridge* [1988], 38 Ohio St.3d 56, 526 N.E.2d 304, construed.)

DOUGLAS, J., concurs in the foregoing concurring opinion.

_____