[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-appellant William J. Letts appeals from his conviction and sentence for Trafficking in Drugs. On appeal he contends that the conviction is against the manifest weight of the evidence. He also contends that the trial court erred by permitting the State to make reference to his juvenile record.
We conclude that the record reveals evidence that, if believed, would persuade the average mind of Letts's guilt beyond a reasonable doubt. We further find that any error in permitting testimony regarding Letts's juvenile record was cured by the trial court's instructions to the jury.
Accordingly, the judgment of the trial court is Affirmed.
 I
William J. Letts was indicted on one count of Trafficking in Drugs in the vicinity of a school in violation of R.C. 2925.03(A). A jury trial was commenced on February 19, 1998. At trial, the State presented the testimony of two City of Dayton police officers, as well the testimony of a confidential informant. Letts, who testified on his own behalf, was the only defense witness.
Dayton Police Detective Mark Stapleton testified that he was working on July 20, 1997, when he and Detective Jorge Delrio picked up their confidential informant, Anna Craig. He testified that the officers took Craig to 1038 Cherry Drive and instructed her to attempt to make a drug buy at apartment number four. The officers gave Craig $20 with which to make the buy. Stapleton testified that the apartment had been targeted by drug enforcement officers because of numerous citizen complaints received regarding drug transactions taking place at that location. He testified that, upon arriving at the apartment in an unmarked car, he and Delrio observed Craig enter the building, followed by Letts. According to Stapleton, Craig left the building after one or two minutes, and was again followed by Letts. He further testified that Letts then walked over to a vehicle, and looked directly at the officers. The officers pulled away from the scene because they thought Letts might have recognized them as officers. According to Stapleton, Letts began following Craig, and was yelling at her. The officers continued to drive, instead of immediately picking Craig up, in order to avoid having her connected with them. When the officers finally picked Craig up, she told them that Letts had sold her drugs. The officers retrieved .09 grams of crack cocaine from Craig. Letts was subsequently arrested by uniformed officers, who recovered $439 on his person.
Stapleton testified that he had personally used Anna Craig in making drug buys about 100 times, and that he found her to be reliable and credible. He also testified that both before and after making the buy, Craig was searched for drugs and money. He further testified that she did not receive advance notice of the location of the buy. The testimony of Detective Delrio corroborated Stapleton's trial testimony.
Anna Craig testified that she had worked as a confidential informant since 1993. She testified that after the Detectives dropped her off at 1038 Cherry Drive, she entered the building along with Letts. She testified that when she knocked on the door of apartment number four, Letts said, "what's up," and opened the door to the apartment. She testified that she asked to see "Bruce," but Letts told her that Bruce was not there. Craig further testified that Letts then asked her what she needed, and proceeded to sell her some crack cocaine. Craig testified that Letts then left the building with her. She testified that when Letts spotted the officers he looked at her and said, "What do you think I am, a stupid, fucking nigger? You're a cop. Come back here, bitch." She testified that she started walking down the street, and that Letts followed her and continued yelling at her. She stated that she became frightened, and began running from Letts. When the detectives picked her up, she told them that Letts had sold her drugs.
Craig testified that she had worked over a thousand cases as a confidential informant. She further testified that she had no input into targeting this particular buy. She also testified that she was paid $20 for each successful buy, and $10 when she was unable to make a buy. She admitted that she had been a drug abuser, but stated that she had been "clean" for one year. She also admitted that she had one conviction for petty theft.
Letts testified that he was homeless in July, 1997. He testified that he kept some of his belongings at a friend's apartment, located at 1038 Cherry Drive, but stated that he did not know the apartment number. He testified that on the day in question, he was in the apartment when Craig knocked on the door. He testified that when he opened the door, Craig asked for Bruce. He testified that he checked, but Bruce was not home. He testified that Craig asked him if he knew "where to get something," and that he told her "no." Letts testified that Craig then left, and that he left the apartment a minute or two later to go to the store.
Letts further testified that when he walked out, Craig, who was by the fence, "jumped" and started walking. He stated that he went to a friend's car to get his watch, and then proceeded to the store. He testified that Craig was in front of him as he walked to the store. He also testified that he recognized the detectives as police officers and that he greeted them as he passed. He testified that he then realized that Craig was with the police and he wondered why she had been looking for Bruce. Letts stated that he wanted to talk to Craig to because he "wanted to know if she was in any danger being around [the apartment]." He further testified that he almost caught up to her when the detectives pulled up, jumped out of the car, and yelled, "[l]eave her alone, you black bastard." At that point, some people Letts knew came out of a building to see what was going on. He was subsequently arrested.
During cross-examination, the prosecutor questioned Letts regarding his criminal record; both as an adult and as a juvenile. Letts admitted that as an adult, he was convicted of driving without a license. Letts also testified that as a juvenile he had been charged with Carrying a Concealed Weapon, Petty Theft and Receiving Stolen Property. Defense counsel then entered an objection to the line of questioning. The trial court sustained the objection as to the concealed weapon, but permitted the State to continue questioning Letts in regard to the other crimes. In response to the State's questions, Letts testified that the stolen property charge involved a vehicle and the theft charge involved a gold ring. He then testified that he was fourteen years old at the time of the crimes, and that he was placed on probation for two years as a consequence of his conduct.
At the conclusion of Letts's testimony, the trial court, suasponte, reversed its decision in regard to the testimony about Letts's juvenile record. The trial court stated:
 I'm going to reverse my former ruling on the juvenile determination, and I'll sustain your objection; and I'll indicate to the jury that any testimony regarding his juvenile record should be disregarded by you for any purpose and particularly in determining credibility. That is not admissible, and I was in error on my earlier ruling. I just looked it up, and I am so instructing the jury.
At the conclusion of the trial, Letts was convicted as charged. Letts filed a motion for a new trial, which the trial court denied. However, the court modified the verdict, as requested by Letts, to reflect that the crime did not occur within 1,000 feet of a school. Letts was sentenced accordingly. From his conviction and sentence Letts appeals.
 II
Letts's First Assignment of Error states:
 THE VERDICT FINDING THE APPELLANT GUILTY OF TRAFFICKING IN COCAINE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Letts cites the following evidence in support of the proposition that the verdict is against the weight of the evidence: (1) the search of Craig prior to the buy consisted of a "physical pat-down;" (2) the officers lost sight of Craig for a period of time after she left the apartment; (3) the officers did not make photocopies or mark the money given to Craig to make the buy; (4) Craig is a former drug user with a petty theft conviction; and (5) Craig had a financial incentive for returning from a buy with drugs; i.e., she made $20 for a completed buy, but only $10 for a failed attempt.
R.C. 2925.03(A), which defines Trafficking in Drugs, provides that "[n]o person shall knowingly sell or offer to sell a controlled substance." One acts knowingly "regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C.2901.22(B).
In reviewing a claim that a conviction is against the manifest weight of the evidence, this court has stated:
 When a conviction is challenged on appeal as against the manifest weight of the evidence, we determine "whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt." State v. Turner
(Dec. 30, 1997), Franklin App. No. 97APA05-709, unreported, citing State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. We review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin
(1983), 20 Ohio App.3d 172, 175. The decision "whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." State v. Lawson
(Aug. 22, 1997), Montgomery App. No. 16288, unreported. Appellate courts should reverse a conviction as against the manifest weight of the evidence only in exceptional circumstances. Martin, supra, at 175.
State v. Pound (Sep. 14, 1998), Montgomery App. No. 16834, unreported.
In this case, Craig testified that after Letts asked Craig what she "needed," she responded that she wanted a "twenty," and that Letts then opened a bag of crack cocaine and handed her a piece in exchange for the $20 she had on her person.[1] Thus, Craig's testimony, if believed, is capable of persuading a reasonable juror that Letts knowingly sold her crack cocaine.
Letts argues that Craig was the only witness to the sale. Thus, he argues, the State's case depends entirely upon her testimony. He then argues that the State's case does not support a conviction because of evidence tending to show that Craig is a former drug user, had a monetary incentive for making a buy, and had a conviction for petty theft. He also argues that since the detectives only performed a pat-down of Craig before the buy, the crack cocaine she claimed to have bought from Letts could have been crack cocaine that she already had on her person. He further argues that the detectives lost sight of Craig for a period of time after the buy and before they picked her up, a time period during which she could have gotten the crack from some other source. Finally, he argues that the money given to Craig was not marked or photocopied, and was not identified as included in the money found on him at the time of his arrest.
The issues that Letts cites in support of his argument go to the credibility and trustworthiness of Craig; i.e., whether her testimony is believable based upon issues that could tend to call her credibility into question. Weighing the credibility of witnesses is the province of the trier-of-fact. State v. Dye
(1998), 82 Ohio St.3d 323, 329, citing State v. DeHass (1967),10 Ohio St.2d 230. In this case, the jury heard testimony by Letts that he did not sell crack, and testimony from Craig that he did. The jury also heard testimony, from the detectives, Letts and Craig, regarding her credibility, trustworthiness and motivation. After weighing the conflicting testimony, the jury chose to believe Craig's version of the transaction. We cannot say, based upon the record before us, that the jury's finding was so misguided as to require reversal of the conviction.
Accordingly, the First Assignment of Error is overruled.
 III
Letts's Second Assignment of Error is as follows:
 THE TRIAL COURT ERRED BY ALLOWING ANY REFERENCE OR TESTIMONY REGARDING APPELLANT'S JUVENILE RECORD, THEREBY DEPRIVING THE APPELLANT OF A FAIR TRIAL.
Letts contends that the trial court improperly permitted the prosecutor to impeach him through the use of his juvenile record. He further argues that although the trial court directed the jury to disregard all information regarding his juvenile record, the "damage had been done and the bell was ringing loudly in the minds of the jurors."
As previously noted, during the State's cross-examination of Letts, inquiry was made, and allowed to proceed over objection, in regard to his juvenile record. However, counsel did not request a curative instruction or a mistrial. In any event, the trial court did admonish the jury, at the end of Letts's testimony, to disregard any reference to Letts's past record. Also, during the general instructions to the jury, the trial court instructed them that any evidence that had been stricken during the testimony was not to be regarded as evidence during deliberations.
We find that any prejudice stemming from this testimony was diminished by the fact that Letts admitted to having an adult criminal record. Moreover, it is presumed that a jury follows the instructions given to it. State v. Mason (1998), 82 Ohio St.3d 144,157. Thus, in the absence of any proof to the contrary, we will presume that the jurors did not consider Letts's juvenile record in reaching their verdict.
The Second Assignment of Error is overruled.
 IV
Both Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.
Copies mailed to:
Andrew T. French
Thomas Kollin
Hon. David Sunderland
[1] Craig's testimony indicates that a "twenty" is a street reference to $20 worth of crack.