{¶ 59} Virtually every instance of rape of a child involves some force because the law deems a child incapable of consenting to sexual conduct. However, to prove the element of force necessary to sentence the defendant to life imprisonment, the statute requires some amount of force beyond that inherent in the crime itself. State v. Dye (1998),82 Ohio St.3d 323, 327. That force may be physical or psychological. Id. at 328. Here, the majority focuses upon the physical act of "manipulating the victim's clothing and sleeping body into a position that facilitated the sexual conduct." It concludes this action was sufficient to satisfy the element of force. However, that testimony is related to other charges in the indictment, not this incident. And there is no testimony that the victim had on any sleeping garments or whether he was sleeping on his stomach, side or back during this incident. If one was to adopt the logic of the majority, simply removing the bed covers from a naked sleeping body would satisfy the sentencing enhancing factor of force. This is a conclusion I cannot reach because those acts were inherent in the crime itself. Dye at 328.
 {¶ 60} The victim testified that Burton did not make any threats, or even say anything to him, during the incident at the Econo-Lodge. Moreover, the victim did not say anything to Burton or ask him to stop. Nor did the victim act to remove himself from Burton's grasp. And, unlike the third incident at Burton's apartment where the victim indicated he was confused and *Page 26 
concerned about what happened (ejaculation), he made no mention of any concern or fear during this incident. The victim's entire direct examination concerning this incident is:
 Q. Did anything happen to you while you were sleeping at the Econo-Lodge?
 A. Yes.
 Q. Can you tell us what happened?
 A. Um, he masturbated me and performed oral sex on me.
 Q. Did you ejaculate?
 A. Yes.
 Q. Where did you ejaculate?
 A. On him, on his mouth.
 Q. Did you say anything to him about what was going on?
 A. No, not in the motel.
 Q. Did he say anything to you?
 A. No.
 Q. Were there any threats that night?
 A. No.
 Q. How much did you have to drink that night?
 A. It was more than, it was probably about six or seven beers that night. It was a good amount of beer.
 Q. Was that the only time that you'd been at the Econo-Lodge.?
 A. No, I was there a few other times.
 Q. With Shawn?
 A. Yes. *Page 27 
 Q. Same reason given why you would go there, that his parents were drinking a lot?
 A. Yes.
 Q. You mentioned that there was another location or place where some things occurred. You mentioned besides the bedroom, then you mentioned the hotel, and you said the cruiser, is that right?
 A. That's correct.
Noticeable by its absence is any reference to or inference of force.
 {¶ 61} The majority also relies upon psychological force, which it finds to exist by virtue of the difference in age and size of the victim and Burton and the latter's relationship with the boy's mother and the Gallia County Sheriffs Department. Eskridge stands for the proposition that the State must establish the victim's will was overcome by fear or duress. But where a parent is involved, the threat implicit in a command from that authority figure may satisfy the test. Eskridge at 59. In essence the majority applies the relaxed standard for force found inEskridge to a non-parent/child relationship. Some courts, including this one in Shadoan, have extended the relaxed standard of psychological coercion to defendants who have assumed the status of in loco parentis. However, Burton does not have that relationship with the victim. There is no evidence that Burton ever exercised the authority to punish or regulate the victim's conduct. There is no evidence the victim's mother told the victim to obey Burton or that she put him "in charge" of the victim. There is no evidence that Burton used his status with the Sheriffs Department in any manner during the Econo-Lodge incident. The relationship between the victim and Burton can best be described as fraternal rather than paternal. They were playmates, or big brother and little brother, not father and son. In sum, there is no basis for finding an *Page 28 
implicit threat of punishment for disobedience here. Despite the fact Burton breached the trust the mother placed in him and perpetrated heinous crimes against his victim, the relaxed Eskridge standard for psychological coercion should not be applied here.
 {¶ 62} Finally, all of Burton's threats of violence happened during incidents that occurred after the Econo-Lodge sexual assault. Thus, they could have no psychological impact upon the victim's will in a prior act of abuse.
 {¶ 63} Because the State failed to produce any evidence of force or the threat of force during the Econo-Lodge abuse, I would sustain the second and third assignments of error. *Page 29 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Harsha, J.: Concurs in Judgment and Opinion as to Assignment of Error I; Concurs in Judgment Only as to Assignment of Error IV; Dissents with Dissenting Opinion as to Assignments of Error II and III.
 Abele, J.: Concurs in Judgment and Opinion. *Page 1