OPINION
{¶ 1} Defendant-Appellant James A. Sheriff ("Sheriff) appeals the February 28, 2008 Judgment Entry and Sentencing of the Court of Common Pleas of Logan County, Ohio sentencing him to three years in prison on two counts of Sexual Battery, in violation of R.C. 2907.03, felonies of the third degree. The trial court ordered that Sheriff's sentences were to be served concurrently. Sheriff was also classified as a Tier III sexual offender.
 {¶ 2} On September 11, 2007 Sheriff was indicted on two counts of Unlawful Sexual Conduct with a Minor, in violation of R.C. 2907.04, felonies of the third degree, and three counts of Sexual Battery, in violation of R.C. 2907.03(A)(5), felonies of the third degree. On September 21, 2007 Sheriff was arraigned and pled not guilty to all five counts.
 {¶ 3} A jury trial commenced on January 10, 2008. On January 11, 2008 the jury returned a verdict of not guilty on both counts of Unlawful Sexual Conduct with a Minor and one count of Sexual Battery. The jury found Sheriff guilty of two counts of Sexual Battery.
 {¶ 4} A sentencing hearing was held on February 25, 2008. Sheriff was sentenced to three years in prison on each count of Sexual Battery, in violation of R.C. 2907.03, felonies of the third degree. The trial court ordered that Sheriff's sentences be served concurrently. Sheriff was classified as a Tier III sexual offender. *Page 3 
 {¶ 5} Sheriff now appeals asserting three assignments of error.
 ASSIGNMENT OF ERROR I THE INDICTMENT WAS DEFECTIVE AS A MATTER OF LAW RESULTING IN THE CONVICTIONS BEING VOID.
 ASSIGNMENT OF ERROR II THE CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR III THE TRIAL COURT FAILED TO COMPLY WITH R.C. 2950.03(A) WHEN PROVIDING NOTICE OF THE DUTY TO REGISTER AS A SEXUALLY ORIENTED OFFENDER.
 {¶ 6} For ease of discussion, we will address Sheriff's assignments of error out of order.
 Second Assignment of Error {¶ 7} In his second assignment of error, Sheriff argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 8} Reviewing a challenge to the sufficiency of the evidence, requires this Court to examine the evidence in the light most favorable to the prosecution. In State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows: *Page 4 
 [A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Jenks, 61 Ohio St.3d at 273.
 {¶ 9} Alternatively, when reviewing whether a verdict is against the manifest weight of the evidence, the appellate court must review the entire record, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 1997-Ohio-52.
 {¶ 10} It is important to remember that the credibility to be afforded the testimony of the witnesses is to be determined by the trier of fact.State v. Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763,1998-Ohio-234; State v. Frazier (1995), 73 Ohio St.3d 323,652 N.E.2d 1000, 1995-Ohio-235.
 {¶ 11} The charges in the present case stem from conduct occurring between Sheriff and the daughter of his live-in girlfriend, Melissa Davidson ("Melissa"). Melissa and Sheriff began dating in 2001. Prior to dating, Sheriff and Melissa went to high school together and knew each other well. After dating *Page 5 
Sheriff for approximately five months, Sheriff moved in with Melissa and her two daughters, Laura and Brittany, who were 11 and 12 years old, respectively.
 {¶ 12} Brittany testified that in the summer of 2003, when she was fourteen years old, Sheriff began having sexual contact with her. According to Brittany, when it was hot in the summer, Brittany, Laura, and Sheriff would all sleep in a waterbed in an air conditioned porch. One night, while all three were in the bed, Brittany stated that Sheriff "started touching my chest, and then he — touched my private area with his hands." (Tr.p. 169). After this touching happened Brittany was upset and went to the bathroom. Sheriff came to check on her and stated that he was sorry and that he could go to jail for his conduct. (Tr.p. 171).
 {¶ 13} After that first incident, Brittany stated that the conduct continued that "[Sheriff] would touch me and then I would touch him." (Tr.p. 171). Brittany also stated that she began engaging in oral sex with Sheriff, and that immediately after the beginning of Christmas break in 2003, she began having sexual intercourse with Sheriff. (Tr.p. 173).
 {¶ 14} Sheriff continued having sexual intercourse with Brittany until May of 2007. Brittany testified that between December 2003 and May 2007, sexual acts occurred between her and Sheriff "pretty much every night until him and my mom split up," which she believed was in July of 2006. (Tr.p. 174). *Page 6 
 {¶ 15} Brittany testified that Sheriff never forced her to engage in sexual conduct with him and that she felt like he was her boyfriend. However, in approximately February of 2004, Sheriff and Melissa became engaged, but six months into their engagement, Sheriff decided he did not want to get married.
 {¶ 16} When questioned as to why she did not disclose her relationship with Sheriff to her mother or another authority figure, Brittany stated that she felt everyone would be disappointed in her. Brittany also stated that she felt like the "other woman" because she knew that her mother cared deeply for Sheriff and wanted to get married. Brittany testified that while Sheriff and Melissa were engaged, she asked him if he was actually going to marry Melissa. According to Brittany, Sheriff stated that he would not marry Melissa, but would someday marry Brittany. Moreover, when Sheriff testified, he stated that the engagement was always a joke.
 {¶ 17} When Melissa and Sheriff ended their relationship, Sheriff told Brittany that he ended the relationship so that he could be with Brittany. Melissa believed that Laura and Brittany had a parent-child relationship with Sheriff and still allowed the girls to spend time with Sheriff after the relationship ended. Sheriff would "take Brittany hunting" which often involved engaging in sex at his residence or at a hotel in the Bellefontaine or Columbus area. *Page 7 
 {¶ 18} When Sheriff testified at trial, he admitted that he had sexual intercourse with Brittany, but stated that it did not occur until she turned eighteen. Moreover, Sheriff testified that Brittany initiated the relationship.
 {¶ 19} Specifically, in this assignment or error, Sheriff argues that the state failed to prove the elements of Sexual Battery, defined by R.C. 2907.03, in pertinent, as follows:
 (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 * * *
 (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.
 {¶ 20} Sheriff argues that the state failed to prove that he acted in loco parentis of Brittany. This Court has most recently addressed the requirements of acting in loco parentis in State v. Stout, 3rd Dist. 8-07-12, 2008-Ohio-161. In Stout, this Court relied on the interpretation of R.C. 2907.03(A)(5) as espoused inState v. Noggle (1993), 67 Ohio St.3d 31, 615 N.E.2d 1040,1993-Ohio-189.
 {¶ 21} In discussing the intent of the legislature in enacting R.C. 2907.03(A)(5), the Noggle Court observed that
 [t]he Committee Comment to H.B. No. 511 discusses how (A)(5) fits within the rest of the statute: "Incestuous conduct is also included, though defined in broader terms than formerly, so as to include not only sexual conduct by a parent with his child, but also sexual conduct by a step-parent with his step-child, a *Page 8 guardian with his ward, or a custodian or person in loco parentis with his charge."
Noggle, 67 Ohio St.3d at 33.
 {¶ 22} Moreover, in defining the term in loco parentis, the Ohio Supreme Court found that "[t]he phrase "person in loco parentis" in R.C. 2907.03(A)(5) applies to a person who has assumed the dominant parental role and is relied upon by the child for support. * * * Simply put, the statute applies to the people the child goes home to." Id.
 {¶ 23} Melissa testified that after Sheriff moved into the home he required Laura and Brittany to do chores and became the disciplinarian to both of Melissa's daughters. When Sheriff and Melissa initially began cohabitating, they were residing in a trailer rented by Melissa. However, after several months they moved into a house owned by Sheriff's employer. The rent for this home was deducted out of Sheriff's paycheck. Melissa, Brittany, and Laura all resided with Sheriff in this home until 2006 when the relationship between Sheriff and Melissa ended.
 {¶ 24} During the time Sheriff and Melissa lived together, they paid the expenses of the household together. Although each person was often responsible for a separate bill, they shared the expenses of the house. The rent came directly from Sheriff's paycheck, while Melissa paid many of the household bills. Sheriff *Page 9 
also frequently paid the entertainment expenses for the family, taking Melissa and both of her daughters out for meals, movies, and on vacations.
 {¶ 25} In addition to Melissa and her daughters, Sheriff also hosted his children from a previous relationship at the house. Sheriff's children would stay at the house every other weekend and for several weeks each summer.
 {¶ 26} Melissa also testified that Sheriff would spend a significant amount of time with Brittany. Sheriff took Brittany hunting. When Brittany needed a dress for a school dance, Sheriff took her shopping for both that dress and a prom dress. Sheriff purchased a cell phone for Brittany so that they could keep in touch. When specifically questioned as to who she looked to for parental support, Brittany responded that Sheriff and Melissa were equal sources of emotional support, but that if she needed something like clothing, she would go to Sheriff.
 {¶ 27} We find that Sheriff provided both financial and emotional support for Brittany. In the case sub judice, we find that the jury verdict was supported by both sufficient evidence and the manifest weight of the evidence. Accordingly, Sheriff's second assignment of error is overruled.
 First Assignment of Error *Page 10 {¶ 28} In his first assignment of error, Sheriff argues that the indictment for the two counts of Sexual Battery, Courts Four and Five is defective. Specifically, Sheriff argues that the indictment is defective for failing to provide the degree of culpability for the offense of sexual battery.
 {¶ 29} The mental state of the offender is a part of every criminal offense in Ohio, except those that plainly impose strict liability. SeeState v. Colon, 118 Ohio St.3d 26, 885 N.E.2d 917, 2008-Ohio-1624
at ¶ 11[1] citing State v. Lozier, 101 Ohio St.3d 161, 2004-Ohio-732,803 N.E.2d 770, ¶ 18. However, "[w]hen the section defining an offense does not specify any degree of culpability and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. Colon, 2008-Ohio-1624 at ¶ 13 citing State v. Lozier,101 Ohio St.3d 161, ¶ 18.
 {¶ 30} Revised Code 2907.03 defines Sexual Battery in pertinent part as follows:
 (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 (1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution. *Page 11 
 (2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.
 (3) The offender knows that the other person submits because the other person is unaware that the act is being committed.
 (4) The offender knows that the other person submits because the other person mistakenly identifies the offender as the other person's spouse.
 (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.
 (6) The other person is in custody of law or a patient in a hospital or other institution, and the offender has supervisory or disciplinary authority over the other person.
 (7) The offender is a teacher, administrator, coach, or other person in authority employed by or serving in a school for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code, the other person is enrolled in or attends that school, and the offender is not enrolled in and does not attend that school.
 (8) The other person is a minor, the offender is a teacher, administrator, coach, or other person in authority employed by or serving in an institution of higher education, and the other person is enrolled in or attends that institution.
 (9) The other person is a minor, and the offender is the other person's athletic or other type of coach, is the other person's instructor, is the leader of a scouting troop of which the other person is a member, or is a person with temporary or occasional disciplinary control over the other person.
 (10) The offender is a mental health professional, the other person is a mental health client or patient of the offender, and *Page 12 the offender induces the other person to submit by falsely representing to the other person that the sexual conduct is necessary for mental health treatment purposes.
 (11) The other person is confined in a detention facility, and the offender is an employee of that detention facility.
 (12) The other person is a minor, the offender is a cleric, and the other person is a member of, or attends, the church or congregation served by the cleric.
 {¶ 31} Count Four of the indictment provides as follows:
 James A. Sheriff, between the dates of March 18, 2005, and March 17, 2006, at the county of Logan aforesaid, engaged in sexual conduct with another, not the spouse of the offender when the offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person, to wit: James A Sheriff did reside with the victim, the victim's mother, and the victim's siblings, share responsibility for household expenses to the benefit of the victim, and share responsibility for disciplining the children in the victim's home, in violation of Ohio Revised Code § 2907.03(A)(5), Sexual Battery, a felony of the third degree.
 {¶ 32} Count five of the indictment contains identical language but modifies the time period to apply to the time between March 18, 2006 and March 17, 2007. Neither R.C. 2907.03(A)(5) or the indictment provide a degree of culpability for a violation of R.C. 2907.03(A)(5). R.C. 2901.21 (B) provides the degree of criminal liability where a statute does not specify liability as follows:
 (B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor *Page 13 plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.
 {¶ 33} In State v. Singleton, 11th Dist. No. 2002-L-077, 2004-Ohio-1517, the Eleventh District Court of Appeals addressed the degree of culpability required to commit Sexual Battery, reasoning as follows:
 R.C. 2907.03(A)(5) does not specify any degree of culpability; therefore, we must determine whether it plainly indicates a purpose to impose strict liability. We hold that it does.
 R.C. 2907.03(A)(1)-(4) states that liability is premised on the actor knowingly committing an act. The remaining subsections, five through eleven, do not specify any degree of culpability. A review of the latter show that they are designed to protect those under the direct control or supervision of another, i.e., children and their parents, hospital or institutional patients, students. It seems clear that the legislature intended to impose strict liability in these instances to protect the most vulnerable members of society.
 Further, because R.C. 2907.03(A)(5) requires the jury to find that specific factual conditions exist, i.e., immediate kinship, the legislature made clear its intent to impose strict liability. Finally, the statute is not ambiguous so we are not required to interpret it strictly against the state.
Singleton, 2004-Ohio-1517 at ¶ 55-57. See also State v. Hannah (June 10, 1986), 10th Dist. No. 85AP-896; State v. Bajaj, 7th Dist. 03 CO 16, 2005-Ohio-2931.
 {¶ 34} We agree with the court in Singleton, finding that R.C. 2907.03(A)(5) is a strict liability offense. Therefore, there was no element of culpability to be included in the indictment. Accordingly, Sheriff's first assignment of error is overruled. *Page 14 
 Third Assignment of Error {¶ 35} In his third assignment of error, Sheriff argues that the trial court erred by failing to meet the requirements R.C. 2950.03 when notifying him of his duties to register as a sexual offender. R.C. 2950.03 the procedure for notifying sexual offenders of their duty to register. With respect to persons sentenced after January 1, 2008, R.C. 2950.03 provides as follows:
 (A) Each person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to a sexually oriented offense or a child-victim oriented offense and who has a duty to register pursuant to section 2950.04 or 2950.041 of the Revised Code and each person who is adjudicated a delinquent child for committing a sexually oriented offense or a child-victim oriented offense and who is classified a juvenile offender registrant based on that adjudication shall be provided notice in accordance with this section of the offender's or delinquent child's duties imposed under sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code and of the offender's duties to similarly register, provide notice of a change, and verify addresses in another state if the offender resides, is temporarily domiciled, attends a school or institution of higher education, or is employed in a state other than this state. The following official shall provide the notice required under this division to the specified person at the following time:
 * * *
 (2) Regardless of when the person committed the sexually oriented offense or child-victim oriented offense, if the person is an offender who is sentenced on or after January 1, 2008 for any offense, and if division (A)(1) of this section does not apply, the judge shall provide the notice to the offender at the time of sentencing. *Page 15 
 {¶ 36} In the present case, Sheriff was sentenced on February 28, 2008. The trial court was required under 2950.03(A)(2) to inform Sheriff of his registration duties at the time of sentencing. At sentencing the trial court stated
 Defendant previously has been tried to a jury and convicted of two counts of sexual battery. The Court assigned this matter for sentencing today. First order of business the sexual classification under the new Adam Walsh Act. This Offense is a Tier III sex offense. The defendant has a duty to register for life and do in-person verifications every 90 days. The Court has asked counsel to fill out the notification form and ask the defendant to sign that at this time.
(Tr.p. Sentencing 2).
 {¶ 37} Sheriff's counsel responded that Sheriff has read and signed the form. The form, entitled "Explanation of Duties to Register as a Sex Offender or Child Victim Offender Duties commencing on or after January 1, 2007(ORC 2950.04 or 2950.041)," was signed by Sheriff on February 25, 2008.[2] By signing this form, Sheriff indicated that he acknowledged and understood his registration requirements.
 {¶ 38} Other courts have construed prior versions of R.C. 2950.03(A)(2). In State v. Mack, 1st Dist. No. C-050968,2006-Ohio-6284 the court gave its interpretation of the notice provision as follows.
 The required notice is detailed. The court must provide Mack with the notice on a form prescribed by the bureau of criminal *Page 16 identification and investigation. It must have Mack read and sign the form or, if Mack cannot read, explain the contents of the form to him and certify that he has indicated an understanding of his duties. The court is then required to give a copy of the form to Mack and to send a copy to the bureau of criminal identification and investigation and the sheriff.
Id. at ¶ 20 (internal citations omitted).
 {¶ 39} Moreover, the First District Court of Appeals has addressed the requirement of notification as a due process concern, finding that "a Conviction without notification by the trial court that an offender has a duty to register, however, violates the fundamental fairness required by due process of law." State v. Cooper, 1st Dist. C-030921, 2004-Ohio-6428.[3] Accordingly, R.C. 2950.03 requires notice of the registration requirements, and that a defendant be provided with a form detailing those requirements. R.C. 2950.03 does not require that a defendant be orally advised of each notification provision unless a trial court finds a defendant unable to read and understand the notification form.
 {¶ 40} Although this Court would encourage trial courts to more thoroughly explain the requirements of registration to a defendant, we cannot find that the bare minimum requirements of notification were not met. Accordingly, Sheriff's third assignment of error is overruled.
 {¶ 41} Based on the foregoing, the February 28, 2008 Judgment Entry and Sentencing of the Court of Common Pleas of Logan County, Ohio is affirmed. *Page 17 
 Judgment Affirmed
 WILLAMOWSKI and ROGERS, J.J., concur.
[1] We note that in Colon the Ohio Supreme Court rearticulated recklessness as the "catchall culpable mental state for criminal statutes that fail to mention any degree of culpability."Colon, 2008-Ohio-1624 at ¶ 13. However, as the Colon Court recognized, that requirement does not apply to cases such as the present where the statute plainly imposes strict liability and has previously been determined to impose strict liability.
[2] The notification form was not originally contained in the record before this Court. However, on the State's motion to supplement the record to include the notification form, it was subsequently included in the record and is now properly part of the record in this appeal.
[3] We note that this decision was decided under a prior version of 2950.03. However, the notification provisions are similar. *Page 1