DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. A jury found John D. Hurt, defendant below and appellant herein, guilty of voluntary manslaughter in violation of R.C. 2903.03.
 {¶ 2} Appellant's counsel has advised this Court he has reviewed the record and can discern mo meritorious claim on appeal. Thus, underAnders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396,18 L.Ed.2d 493, counsel requests, and we hereby grant, leave to withdraw. Counsel assigns the following potential assignment of error *Page 2 
for review:
 "IN VIOLATION OF DUE PROCESS, MR. HURT WAS FOUND GUILTY OF VOLUNTARY MANSLAUGHTER WHEN SUCH FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} On the afternoon of July 4, 2006, a group gathered at the home of Charles and Patricia King to celebrate Independence Day. In the spirit of the holiday, the group began drinking and by nightfall, became quite inebriated.[1]
 {¶ 4} Later that night, after Patricia King and others left to see the city's fireworks, appellant, who lived next door to the Kings, and his friend, Rick Shaw, walked to the home and joined the crowd. Feeling somewhat amorous after a few beers, appellant purportedly asked Rachel Kerns to perform fellatio, while Shaw began groping the legs of Rachel's sister, Jhonda Kerns. King maintained a calm demeanor until appellant and Shaw stole his beer and taunted his dog. King thereafter rose to the defense of his pet and property, attacked appellant and knocked him off the porch.
 {¶ 5} Appellant quickly recovered and he and Shaw knocked King to the ground and kicked him repeatedly in the chest and head. Both Rachel Kerns and Reda Eichenlaub, a neighbor who observed the incident, called 911 and police were dispatched to the residence. King was transported to the Southern Ohio Medical Center, but his injuries were so severe that the hospital only stabilized him so that he could be transported to the nearest trauma center in Huntington, West Virginia. There, despite emergency surgery to remove a ruptured spleen, King died the following day. *Page 3 
 {¶ 6} Subsequently, the Scioto County Grand Jury returned an indictment charging appellant with voluntary manslaughter.[2] He pled not guilty and the matter came on for jury trial in June 2007. At trial, Rachel and Jhonda Kerns both testified that they observed appellant repeatedly kick King's head and chest. Robin Furnish, the victim's step-daughter, testified that she later heard appellant admit "[i]n the yard beside his car" that "he just beat the hell out of his neighbor." Portsmouth Police Department Sergeant Michael Hamilton testified that when he arrived at the scene, appellant was standing over King and appeared "very nervous" at the sight of the police.[3]
 {¶ 7} Dr. Iouri Boiko, deputy Medical Examiner for West Virginia, testified that King died from blunt force trauma that caused multiple contusions to his brain, liver, spleen and lungs. Dr. Boiko explained that those injuries were consistent with repeated kicking about the face and head.
 {¶ 8} Appellant testified in his own defense and denied that he struck King. He explained that he is a pacifist, a born-again Christian, and a singer and songwriter best known for Lock `em Down, a song about the Lucasville prison riots. When asked about testimony from the Kerns sisters and Sergeant Hamilton, appellant asserted that they all lied in their account.
 {¶ 9} The jury returned a verdict of guilty and the trial court sentenced appellant to serve a ten year prison term. This appeal followed. *Page 4 
 {¶ 10} Defense counsel posits that the only arguable assignment of error that he could find is that appellant's conviction is against the manifest weight of the evidence.
We disagree.
 {¶ 11} When an appellate court reviews a claim that a verdict is against the manifest weight of the evidence, the conviction may not be reversed unless the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Earle (1997), 120 Ohio App.3d 457,473, 698 N.E.2d 440; State v. Garrow (1995), 103 Ohio App.3d 368,370-371, 659 N.E.2d 814; State v. Davis (1988), 49 Ohio App.3d 109, 113,550 N.E.2d 966. Because the gist of the assignment of error also challenges credibility of prosecution witnesses, we also point out that the weight of the evidence and the credibility of witnesses are issues that the trier of fact must decide. State v. Dye (1998),82 Ohio St.3d 323, 329, 695 N.E.2d 763; State v. Ballew (1996), 76 Ohio St.3d 244,249, 667 N.E.2d 369; State v. Williams (1995), 73 Ohio St.3d 153, 165,652 N.E.2d 721. The trier of fact is free to believe all, part or none of the testimony of each witness. State v. Nichols (1993),85 Ohio App.3d 65, 76, 619 N.E.2d 80; State v. Caldwell (1992),79 Ohio App.3d 667, 679, 607 N.E.2d 1096; State v. Harriston (1989), 63 Ohio App.3d 58,63, 577 N.E.2d 1144.
 {¶ 12} The provisions of R.C. 2903.03 prohibit knowingly causing the death of another while under the influence of sudden passion or a sudden fit of rage. The Kerns sisters both testified that King attacked appellant, and then appellant and Shaw got the upper hand in the fracas and beat King so badly that he eventually died from his injuries. Robin Furnish further testified that she heard appellant admit later in the *Page 5 
evening that he "beat the hell" out of his neighbor. Sergeant Hamilton also testified that he arrived on the scene to find appellant standing over King and looking very nervous.
 {¶ 13} In light of this evidence, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice by finding appellant guilty of voluntary manslaughter. We acknowledge that King had the opportunity to name appellant and Shaw as his attackers and did not do so. However, we are also cognizant of testimony from Michael Kinsky, a paramedic, and Dr. Wagennar at SOMC, that King was in bad shape and may not have been sufficiently coherent to identify his attackers. We further acknowledge that appellant presented evidence of a contrary version of events. It, however, is manifestly obvious that the jury did not find that evidence, including appellant's testimony, to be credible which is well within its province as the trier of fact.
 {¶ 14} Having reviewed the potential assignments of error, and finding no merit therein, we hereby grant appellate counsel's motion to withdraw and we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period. *Page 6 
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, P.J. McFarland, J.: Concur in Judgment Opinion
[1] Several of the state's witnesses testified that Charles King became increasingly belligerent. Even earlier in the day, he apparently became agitated when a friend began harassing "Shuffles," a homeless man who stayed with the Kings.
[2] Rick Shaw apparently fled to Florida after this incident, but eventually apprehended.
[3] Sergeant Hamilton conceded that King did not identify appellant, or presumably Shaw, as the man who had assaulted him. *Page 1